59 So.2d 492 (1952)
SERPAS
v.
MARGIOTTA et al.
No. 19781.
Court of Appeal of Louisiana, Orleans.
June 9, 1952.
Alcide J. Weysham, New Orleans, for appellant.
Monroe & Lemann, Nicholas Callan, John Pat Little, New Orleans, for appellees.
Before JANVIER and REGAN, JJ., and HARRY B. KELLEHER, Judge ad hoc.
REGAN, Judge.
Plaintiff, Lawrence A. Serpas, Jr., instituted this suit against defendants, J. P. Margiotta, an employee of the Louisiana State Society for the Prevention of Cruelty to Animals, and Globe Indemnity Company, its insurer, endeavoring to recover the sum of $40,321, as damages, for the death of his minor son, Lawrence G. Serpas, age five years, who, he alleged, died as a result of the bite of an obviously rabid and dangerous dog, which defendant, Margiotta, in his capacity as an employee of the Louisiana State Society for the Prevention of Cruelty to Animals deliberately refused, upon request, to apprehend, subdue or destroy.
Defendants pleaded the exceptions of no right or cause of action which were maintained by the court, a qua, dismissing plaintiff's suit. Hence this appeal.
*493 The pertinent articles of plaintiff's original and supplemental petition which are to be accepted as true for the purpose of passing upon the validity of the lower court's judgment in maintaining defendants' exceptions of no right or cause of action, read as follows:
"That J. P. Margiotta, whose christian name is unknown to your petitioner, and the Globe Indemnity Company, domiciled out of the State of Louisiana, but licensed to engage in the general insurance business in Louisiana, with offices in New Orleans, Louisiana, are justly and truly indebted to your petitioner, in solido, in the full sum of Forty Thousand, three hundred twenty one and oo/100 ($40,321.00) Dollars, together with legal interest, from date of judicial demand and for all costs of these proceedings, for this, to-wit:
"II.
"That your petitioner was the lawful father of Lawrence G. Serpas, who died on the 30th day of March, 1948, at the age of five (5) years, as the result of having been bitten by a rabid dog on February 25th, 1948, all as will more fully appear, particularly as hereinafter described.
"III.
"That your petitioner alleges that on February 25th, 1948, at approximately 10 a. m., there was a rabid dog in petitioner's neighborhood of premises 927 Odeon Street, in Algiers, Louisiana, where petitioner was residing at the time.
"IV.
"That your petitioner's next door neighbor, Mrs. Edith Frazier, called the Society Prevention Cruelty to Animals, Inc., to come and get a dog that appeared to be rabid, and which was attacking other dogs viciously.
"V.
"That notwithstanding the fact that this telephone call was made to this Society at approximately 10 a. m., on the above date, a representative of the Society, J. P. Margiotta, one of the defendants herein, arrived at approximately 4 p. m. on the same date.
"VI.
"That when the said J. P. Margiotta, while acting within the course and scope of his employment, as the representative of the Society Prevention Cruelty to Animals, Inc. arrived at 4 P.M., he promptly asked a Mrs. August Gaspard, one of the petitioner's neighbors to get the rabid dog, and when the said Mrs. Gaspard refused, the said J. P. Margiotta refused to make any attempt to subdue said dog, and the said J. P. Margiotta left without taking the said dog, which was obviously rabid at the time.
"VII.
"That at approximately 6 p. m. that same afternoon, this same rabid dog came into petitioner's front yard where his minor child, the late Lawrence G. Serpas, was playing, and said dog jumped and bit the deceased child over the right eye.
"VIII.
"That your petitioner called the Society Prevention Cruelty to Animals and informed them what had happened, and another representative, while acting within the course and scope of his employment, as a representative of the Society Prevention Cruelty to Animals, came back to the scene at approximately 7 p. m., that same date, and at that particular time a policeman was called to subdue said rabid dog in the rear yard of petitioner's neighbor, Joseph Costello, wherein said policeman shot the rabid dog.
"IX.
"That your petitioner's late minor child, Lawrence G. Serpas, was immediately taken to the Charity Hospital after he was bitten by this dog and he was thereafter administered the Pasteur Treatment.
"X.
"That on March 30, 1948, the said minor child, Lawrence G. Serpas, died as a result of the above described dog *494 bite, said child's death being diagnosed by Dr. C. Grenes Cole, Coronor for the Parish of Orleans, as follows:
"`Cause of Death: Rabies: encphalitis following Pasteur Treatment; Pulmonary edema, bilateral; pleural effusion, left accidental. Happened at residence. Bitten by rabid dog.
"XI.
"That your petitioner hereto attaches a certified copy of the Coronor's report and makes it part hereof.

* * * * * *
"XIII.
"That your petitioner alleges that the child suffered severely prior to his death, and died a horrible death at the end.
"XIV.
"That your petitioner alleges that the Society Prevention Cruelty to Animals has the duty of maintaining the safety of the general public from stray dogs and particularly to apprehend dogs that are dangerous or rabid by virtue of the fact that this duty has been delegated to this Society by the City of New Orleans by virtue of Act 225 of 1926 of the Legislature of Louisiana; and that in this particular case it failed to do so, in that its duly authorized agent and representative, Mr. J. P. Margiotta, deliberately refused to take or apprehend or kill or subdue a dog that was obviously rabid, after the said J. P. Margiotta was requested to do so, and after he had seen the condition of this rabid dog, and both the said J. P. Margiotta and the Society Prevention Cruelty to Animals, are consequently liable to your petitioner for acts of negligence, while acting within the course and scope of his employment.
"XV.
"That your petitioner alleges that the Globe Indemnity Company, the insurer of the Society Prevention Cruelty to Animals, is liable in solido, being the insurer of the Society Prevention Cruelty to Animals.
"XIV Supplemental Petition
"That your petitioner alleges that the Louisiana Society for the Prevention of Cruelty to Animals is a non-profit corporation, having been incorporated by virtue of the express provisions of Act 254 of 1914 of the Louisiana Legislature, as amended by Act 146 of 1936 of the Louisiana Legislature, permitting the incorporation of such societies. And that the City of New Orleans, exercising the right to delegate its duty of patrolling the streets and protecting the public from injury by vicious dogs, in accordance with Act 225 of 1926 of the Louisiana Legislature, enacted Ordinance No. 14,578, a Commission Council Series on May 21, 1947, a certified copy of which is hereto attached and made part hereof and is specifically pleaded herein, as though copied in extenso. That by virtue of this delegated duty as stated above, the Louisiana Society for the Prevention of Cruelty of Animals had the obligation and duty of destroying, if unable to impound, any vicious dog found in violation of said ordinance; and that in this particular case, the duly authorized agent and representative and employee, while acting within the course and scope of his employment failed to fulfill the duties and obligations of the Louisiana Society for the Prevention of Cruelty of Animals, and was grossly and wantonly negligent in that he deliberately refused to take or apprehend or kill or subdue a dog that was obviously rabid and dangerous, after the said J. P. Margiotta was specifically requested to do so, and after he had seen the condition of this rabid dog, although it was his duty to do so, the said J. P. Margiotta leaving the scene completely without taking any action whatsoever to either apprehend or destroy this dog, and that as a result of the said J. P. Margiotta's failure to discharge his duty as a duly authorized agent and representative and employee of the Louisiana State Society for the Prevention of Cruelty to Animals and because of the said J. P. Margiotta's *495 gross and wanton negligence and deliberate breach of duty, he is consequently liable to your petitioner for his acts of negligence while acting within the course and scope of his employment, his gross and wanton negligence being the direct and proximate cause of petitioner's minor child's death."
It will be observed that the plaintiff refrained from making the Louisiana State Society for the Prevention of Cruelty to Animals a defendant in this litigation, apparently because of the rule of governmental immunity from liability enunciated in the case of Rome v. London and Lancashire Indemnity Company, La.App., 169 So. 132.
In order to intelligently comprehend the issues involved herein it is necessary to refer to Section 1 of Act No. 225 of 1926 as amended by Act No. 98 of 1948, LSA-R.S. 3:2735, which provides:
"The duty of catching, taking possession of and impounding unlicensed, lost, stray, homeless or wandering dogs found in the streets of cities of over four hundred thousand inhabitants shall be delegated, in each of the cities, to a commission, which shall be composed of the members of the board of directors of an incorporated society domiciled in each of the cities and organized for the prevention of cruelty to animals; the members of the board of directors of the societies shall be appointed by the mayors of the cities as members of the commission; the commission, in each of the cities, shall have full power to patrol the streets with a proper and suitable dog wagon, to employ proper implements and agents and shall have the power to perform all such acts as may be necessary to efficiently and humanely catch and impound unlicensed, lost, stray, homeless, or wandering dogs as may be found on the streets of the cities."
The Commissioner Council of the City of New Orleans delegated to the Society for the Prevention of Cruelty to Animals the authority referred to in the above act by virtue of Ordinance No. 14,578, C.C.S., adopted May 31, 1937, the pertinent sections of which read as follows:

"The Louisiana State Society for the Prevention of Cruelty to Animals, through its agents, shall destroy any vicious dog found, in violation of this ordinance, which can not be safely taken up or impounded, but it shall not be lawful for any other person to kill any dog by shooting or poisoning, at any other place than the dog pound. Should any dog be found at large by the agents of the Louisiana State Society for the Prevention of Cruelty to Animals, or escape from said agents by entering the premises of the owner or keeper, and such owner or keeper refuses to deliver such dog to such agent of the Louisiana State Society for the Prevention of Cruelty to Animals, such owner or keeper shall be subject to the penalties provided for in Section 19 of this Ordinance. Nothing herein contained shall be construed so as to authorize the said agents of the Louisiana State Society for the Prevention of Cruelty to Animals to enter the premises of said owner or keeper in pursuit of such dog.

"It shall be also the duty of the Louisiana State Society for the Prevention of Cruelty to Animals or the agents appointed by it, to impound or cause to be impounded any dog or other animal that has bitten a human being, within the corporate limits of New Orleans, or which has been bitten by any animal having rabies or any infection associated therewith, for a period of at least 10 days for observation, and if such animal so impounded shows indication of rabies, it shall be the duty of the Louisiana State Society for the Prevention of Cruelty to Animals to destroy such animal.
"Section 18. The Louisiana State Society for the Prevention of Cruelty to Animals shall have power to patrol the streets of the City of New Orleans, with proper and suitable dog wagons, to employ proper agents, and shall have the power to perform all such acts that may be necessary to efficiently catch *496 and impound all stray or homeless dogs which may be found in the streets, parks, or public places of the City of New Orleans.
"Any person or persons who shall hinder or molest, or interfere with any officer or agent of the Louisiana State Society for the Prevention of Cruelty to Animals, in the performance of any duty provided for by this Ordinance shall be deemed guilty in, and shall be subject to the penalties provided for in Section 19 of this ordinance."
The only vital question posed for our consideration by virtue of the foregoing pleadings is: whether an agent and the insurer of the Louisiana State Society for the Prevention of Cruelty to Animals must respond in damages to the father, for the wrongful death of his five year old child, when that agent, who had been summoned upon the scene of an obviously rabid dog and there requested to impound it or destroy it, deliberately and wilfully refused to do so, which dog, two hours later, and while roaming in the same environment, bit the child.
The judge, a quo, in maintaining defendant's exceptions hereinabove referred to was of the opinion that:
"* * * while the statute and ordinance do create a duty on the part of the S.P.C.A. and its agent and employee to kill stray dogs and destroy vicious ones, it is my opinion that this duty is not owed to individuals, but to the governing body which delegated it. The statute and ordinance merely delegate to the S.P.C.A. the governmental power of the State and City to safeguard the health and welfare of its citizens by clearing the streets of vicious or potentially vicious animals. Thus, the S.P.C.A., having been delegated this duty by the State and City, acts as an agency of the State and City in the performance of the duty, and its agent and employee acts as a public official performing a public duty. Under such circumstances, it seems well settled that there is no liability to individuals for a breach of such duty."
This, of course, is the general rule, however, the facts set forth in plaintiff's petition constitute a classic exception to the general rule, and we are of the opinion that Margiotta, an agent of the Society for the Prevention of Cruelty to Animals, is answerable (assuming that plaintiff proves the allegations of his petition) or liable to plaintiff, a private individual, who sustained special damage resulting from the wilful and deliberate refusal of Margiotta to perform the duty imposed upon him by virtue of the provisions of Act No. 225 of 1926, as amended by Act No. 98 of 1948, LSA-R.S. 3:2735, and Ordinance No. 14,578Sections 17 and 18 thereof. The foregoing ordinance was enacted in the interest of the public safety, health and general welfareits specific purpose was to delegate the responsibility of destroying or impounding vicious or rabid dogs to the Society for the Prevention of Cruelty to Animals. However, it is difficult to conceive of a more flagrant breach of duty owed by an agent of the Society for the Prevention of Cruelty to Animals to an individual citizen than was reflected in the wilful and positive misconduct of Margiotta in refusing to destroy or impound an obviously rabid dog, in consequence of which an innocent five year old child died a horrible death.
When we, in our solitude, contemplate the reasonable and anticipated possible nay, probable consequence of Margiotta's gross misconduct, to wit: man's, woman's or child's inoculation with hydrophobia or rabies, his negligence, as outlined in plaintiff's petition, is even more exemplified and must be the object of our careful scrutiny.
Margiotta, as an agent of the Society for the Prevention of Cruelty to Animals knew or should have known that hydrophobia or rabies is communicated to man by the saliva of the affected animal entering a wound or abrasion of the skin due to the bite of a rabid dog and its ultimate effect a violent death of the individual so infected. The period of incubation of the disease varies from about six weeks to three months, but it principally depends on the part of the body bitten by the dog; bites on the head are the most dangerous, which *497 this case substantiates. The incubation period is also said to be shorter in children. Knowing he has been bitten, the patient's symptoms during the early stage are great mental depression, restlessness and indefinite fear. There is an unusual tendency to talk and articulation is abrupt and rapid. There exists in the patient also high fever, loss of appetite, sleeplessness, headaches, great nervous excitability, respiration of a peculiar sighing or sobbing character and even an aversion to liquids. These symptomsconstitute what is known as the melancholic stageand continue in general for one or two days when they are succeeded by a stage of excitement. The agitation of the sufferer indeed becomes greatly increased and the face of the patient exhibits anxiety and terror. There is marked loss of the capacity to breathe but the most striking and terrible features of this stage are the effects produced by attempts to swallow fluids. The patient suffers from thirst and desires eagerly to drink, but on making the effort is seized with a violent suffocative paroxysm of the muscles of swallowing and breathing and continues for several seconds and is succeeded by a feeling of intense alarm and distress. Indeed the very thought of drinking suffices to bring on a choking paroxysm as does also the sound of running water. The patient is extremely sensitive to any kind of external impressiona bright light, a loud noise, a breath of cool air and contact with anyone are all apt to bring on one of these seizures. These various paroxysms increase in frequency and severity with the advance of the disease. In many instances there are fits of maniacal excitement, succeeded by calm intervals. During all of this stage of the disease the patient is tormented with a secretion accumulating in his mouth which, from dread of swallowing, he is constantly spitting about him.
After two or three days of suffering of the most terrible description the patient succumbs, death taking place either in a paroxysm of choking or from utter exhaustion.
In principal and in public policy we find no distinction between this case and the case of Rome v. London & Lancashire Indemnity Co., supra. In the Rome case the court was of the opinion that the lifeguards were negligent, even though their misconduct was of a negative nature. In this case the negligent conduct of Margiotta was positive and wilful.
We are of the opinion, as was Justice McCaleb, then a member of this court and the author of the opinion on the merits in the Rome case, that the defendant insurer has received from the Louisiana State Society for the Prevention of Cruelty to Animals a valuable consideration. If the defense from suit which it has urged herein is available to it, this insurance company is, in truth and in fact, receiving public monies without consideration for we cannot imagine any case sounding in tort which might successfully be prosecuted against it under the insurance contract.
The general rule of law referred to herein above and the exception thereto, in which category this case falls, is concisely stated in the Fourth Edition of Cooley on Torts, Section 300 at page 385.
"The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to an individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. `The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance.'"

In our opinion the failure of Margiotta to perform an imperative or ministerial public duty imposed on him by virtue of the City Ordinance, which stated that "The Louisiana State Society for the Prevention *498 of Cruelty to Animals, through its agents shall destroy any vicious dog found, in violation of this ordinance, which cannot be safely taken up or impounded" did constitute an individual wrong as the facts incorporated in plaintiff's petition revealed, that in the performance of Margiotta's public duty was involved also a duty to plaintiff as an individual, and that he suffered a special and peculiar injury, the death of his five year old son by reason of its non-performance.
For the reasons assigned the exceptions of no cause or right of action are overruled and the judgment appealed from is annulled, avoided and reversed and it is now ordered that this cause be remanded to the Civil District Court for the Parish of Orleans for further proceedings consistent with the views herein expressed.
Reversed and remanded.
McBRIDE, J., absent, takes no part.