343 So.2d 1097 (1977)
Francis DUFRENE
v.
Anthony GUARINO et al.
No. 7957.
Court of Appeal of Louisiana, Fourth Circuit.
January 12, 1977.
Rehearing Denied February 15, 1977.
Dorothy R. Cowen and Charles R. Maloney, New Orleans, for plaintiff-appellant.
Lemle, Kelleher, Kohlmeyer, Matthews & Schumacher, Paul B. Deal, for Phillip Esteve.
Lawrence D. Wiedemann, New Orleans, for Anthony Guarino.
Plauche F. Villere, Jr., New Orleans, for State Fire Marshal, Raymond B. Oliver.
Caryl H. Vesy, Asst. City Atty., for Vieux Carre Commission of the City of New Orleans.
*1098 Philip S. Brooks, City Atty., for Vieux Carre Commission of the City of New Orleans and for the City of New Orleans, its departments, officers and employees.
Gerald A. Stewart, Philip D. Lorio, III, Asst. City Atty., for the City of New Orleans, its departments, officers and employees.
Beard, Blue, Schmitt & Treen, Robert M. Johnston, New Orleans, for Louisiana Rating & Fire Prevention Bureau.
William J. Guste, Jr., Atty. Gen., Donald B. Ensenat, Asst. Atty. Gen., for the State of Louisiana.
Porteous, Toledano, Hainkel & Johnson, William A. Porteous, III, New Orleans, for Oregon Auto. Ins. Co., Northwestern Nat. Ins. Group, The defendants' Committee, and Phillip Esteve.
Benjamin E. Loup, New Orleans, for The defendants' Committee and Anthony Guarino.
Kierr, Gainsburgh, Benjamin, Fallon & Lewis, Vincent J. Glorioso, Jr., New Orleans and Jane M. Gisevius and Frederick J. Gisevius, Jr., New Orleans, for plaintiffs' Trial Committee.
Before STOULIG, BOUTALL and MORIAL, JJ.
STOULIG, Judge.
This is an appeal from a judgment maintaining an exception of no cause of action.[1] The issue presented is whether government officials or agencies charged with the duty of building inspections are liable for damages incurred in a fire in the premises where allegedly either no inspections were made or improper inspections were made and fire hazards were permitted to exist.
Plaintiff, Francis Dufrene, included as defendants several governmental officers and subdivisions of the City and State [2] in a damage suit for injuries he sustained in a fire in the Upstairs Lounge on June 24, 1973. He alleged that hazardous conditions in the building caused the fire and prevented escape after it was discovered because public officials failed to make the inspections required by law. These defendants either pleaded the exception of no right of action on a sovereign immunity theory or no cause of action on the premise the government duty to inspect was due to the public at large and not to the plaintiff individually.
The trial court did not consider the sovereign immunity plea. Although appellant argues at length the doctrine of sovereign immunity no longer insulates the City or State from tort claims, this is not at issue. Rather, the question is the extent of governmental activity that subjects it to tort liability. In maintaining the exception of no cause of action, the trial court held liability arises only if the duty allegedly breached was owed directly to the individual and was not a function performed for the public at large.
The judgment of the trial court is affirmed. In reaching this result I differ with part of the rationale of Serpas v. Margiotta, 59 So.2d 492 (La.App.Orl.1952). In that case the Society for the Prevention of Cruelty to Animals was held guilty of actionable negligence in failing to impound a rabid dog. At 10 a.m., the SPCA received a report that a rabid dog was roaming the neighborhood. When its agent arrived on the scene at 4 p.m., he refused to capture it because one of plaintiff's neighbors would not "get" the dog. At 6 p.m. on that same day, the dog bit a young child who subsequently died of rabies. In reversing the judgment dismissing the suit by the father of the dead boy on an exception of no cause of action, the court reasoned the breach of the ministerial duty of impounding vicious dogs was a breach of duty owed directly to the dead boy's father. The legal premise for the result reached is quoted:

*1099 "The general rule of law referred to herein above and the exception thereto, in which category this case falls, is concisely stated in the Fourth Edition of Cooley on Torts, Section 300 at page 385.
'The rule of official responsibility, then, appears to be this: That if the duty which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, not an individual injury, and must be redressed, if at all, in some form of public prosecution. On the other hand, if the duty is a duty to an individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. "The failure of a public officer to perform a public duty can constitute an individual wrong only when some person can show that in the public duty was involved also a duty to himself as an individual, and that he has suffered a special and peculiar injury by reason of its nonperformance."'"

We fully subscribe to this statement but differ with the Serpas court's application. The duty to impound dangerous animals was entrusted to the SPCA for the public good. We cannot agree there was an individual obligation between the Society's agent and the victim or his father. And so it is in this case. The duty to inspect the Upstairs Lounge by any of the agencies joined as defendants is imposed to protect the public generally against potential hazards. There was no duty owed individually to all future patrons of this bar.
As the written reasons of the trial judge point out, at the time of Serpas, governmental agencies were not exposed to unlimited liability. In order to proceed, a claimant first had to have the sovereign immunity of the State and/or its agencies waived by the legislature. The requirement that the City respond in damages was not a factor in the SPCA case because that agency was insured against the torts of its employees. At the time Serpas was decided, the court did not concern itself nor could it have been aware of the need to distinguish the municipality in relationship to the individual as opposed to its functions for the general public.
Now, with sovereign immunity a thing of the past, it is important to precisely define the limit of the State's tort liability. Is the City liable if an injury occurs because of inadequate fire or police protection? In Riss v. City of New York, 22 N.Y.2d 579, 293 N.Y.S.2d 897, 240 N.E.2d 860 (1968), the court held the city was not liable for an injury that possibly could have been prevented by police protection. The circumstances are as compelling as those in Serpas. A young lady was blinded and scarred when an ex-suitor who had previously threatened her on several occasions hired someone to throw acid in her face. Although her prior complaints to police about danger from this source were substantiated, the court denied recovery. Its opinion pointed out:
"It is necessary immediately to distinguish those liabilities attendant upon governmental activities which have displaced or supplemented traditionally private enterprises, such as are involved in the operation of rapid transit systems, hospitals, and places of public assembly. Once sovereign immunity was abolished by statute the extension of liability on ordinary principles of tort law logically followed. To be equally distinguished are certain activities of government which provide services and facilities for the use of the public, such as highways, public buildings and the like, in the performance of which the municipality or the State may be liable under ordinary principles of tort law. The ground for liability is the provision of the services or facilities for the direct use by members of the public.
"In contrast, this case involves the provision of a governmental service to protect the public generally from external hazards and particularly to control the activities of criminal wrongdoers. (See, e.g., Messineo v. City of Amsterdam, 17 N.Y.2d 523, 267 N.Y.S.2d 905, 215 N.E.2d *1100 163; Motyka v. City of Amsterdam, 15 N.Y.2d 134, 138-139, 256 N.Y.S.2d 595, 596-598, 204 N.E.2d 635, 636-637; Steitz v. City of Beacon, 295 N.Y. 51, 56, 64 N.E.2d 704, 706, 163 A.L.R. 342, 18 McQuillin, Municipal Corporations [3d ed.], §§ 53.79-53.80.) The amount of protection that may be provided is limited by the resources of the community and by a considered legislative-executive decision as to how those resources may be deployed. * * *"
This factor was considered by the trial judge and in his well-reasoned written opinion he stated:
"The resolution of the issue posed by these exceptions involves ultimately a policy determination properly based on a consideration of the competing benefits sought by each side. The victims point to causation in fact, their very real loss, and the general good to be accomplished by holding public authority responsible in damages for their failure to enforce protective regulations. The agencies rightfully point to the immeasurable and inevitably enormous impact on the public fisc if all agencies are held responsible. The agencies persuasively argue that to impose liability in damages for the failure to enforce regulations might compel the government, by economic necessity, to repeal such regulations and thereby deprive the public of their benefits.
* * * * * *
"The Court is satisfied that the general allegations of these petitions do not set forth sufficient connexity between the general lack of enforcement and the occurrence, to conclude that the agencies wronged these particular claimants individually. * * *"
The cases cited by plaintiff in which the City has been held liable for the torts of its agents all involve factual situations where there is a duty owed to the individual. For example, in Prattini v. Whorton, 326 So.2d 576 (La.App. 4th Cir. 1976), the City was held liable for the negligent act of its police officer agent in directing a bus to move in traffic when it should have been obvious that such a maneuver would cause it to collide with plaintiff's car. As plaintiff points out, directing traffic is a duty carried on for the public good; however, at this moment, the policeman also was obligated to conduct himself in such a way that he did not inflict damage to the property of the individual involved. The motorist was under the explicit direction of the police officer who had the apparent authority to exact his compliance. There was a one-to-one relationship between the city officer and the individual motorist when the injury occurred.
Duran v. City of Tucson, 20 Ariz.App. 22, 509 P.2d 1059 (1973), is similar to the case before us. There plaintiff attempted to hold the city liable for a fire inspection that did not correct the condition that ultimately caused a fire in which he was injured. The court rejected his claim against the city in this language:
"Assuming for the purpose of the motion for summary judgment, the truth of appellants' allegations and statements in deposition, the issue narrows down to whether appellee fire department owed any duty to Mr. Duran. Abrogation of the doctrine of governmental immunity removes the defense of immunity, but does not create any new liability for a municipality. Hoffert v. Owatonna Inn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972). Even though the doctrine of governmental immunity has been abrogated, the plaintiff, in order to recover against the City must show the breach of a duty owed to him as an individual and not merely the breach of an obligation owed to the general public. Massengill v. Yuma County, 104 Ariz. 518, 456 P.2d 376 (1969); Leger v. Kelley, 19 Conn.Sup. 167, 110 A.2d 635 (1954), aff'd, 142 Conn. 585, 116 A.2d 429 (1955); Modlin v. City of Miami Beach, 201 So.2d 70 (Fla.1967); Hoffert v. Owatonna Inn Towne Motel, Inc., supra; Motyka v. City of Amsterdam, 15 N.Y.2d 134, 256 N.Y. S.2d 595, 204 N.E.2d 635 (1965)."
Plaintiff is incorrect in assuming either failure to inspect or negligent inspection *1101 created a cause of action against the City to every patron injured in a fire in the premises. Plaintiff's position in this case is actually a reverse application of governmental immunity. The abolition of governmental immunity requires that states and municipalities be treated the same as an individual citizen. The City owed him no individual duty.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
BOUTALL, J., concurs with written reasons.
MORIAL, J., dissents in part.
BOUTALL, Judge, concurring.
I agree with the result reached in this case and with the reasoning supporting that result. I concur only because I do not agree that it is necessary to overrule the case of Serpas v. Margiotta, 59 So.2d 492 (La.App. Orl.1952).
I consider that in cases of this type it will be necessary to examine each situation on a case by case basis in order to determine the nature of the duty owed. One of the controlling factors in this determination is the extent of control by the governmental agent over the actions of either another person, as in the Prattini v. Whorton case cited in the majority opinion, or over the instrumentality that does the injury complained of. In the Serpas case, supra, different statutes and ordinances were at issue than those here concerned, and additionally we have a different set of facts. In Serpas although the facts are not completely clear, it would appear that the dangerous instrumentality, that is the dog, was under the direct control of the agent, and then permitted to remain at large. Additionally I point out that the matter there involved a suit against the insurer of the individual, and there was no problem presented with a governmental agency liability per so. I would distinguish that case from the present case.
MORIAL, Judge, dissenting.
I dissent from that part of the opinion which affirms the decision of the district court maintaining the defendants' exceptions of no right and/or no cause of action.
NOTES
[1] The case was consolidated with 13 others for trial. The issue of liability is identical.
[2] Raymond B. Oliver, State Fire Marshal; Office of the State Fire Marshal; the City of New Orleans; the Vieux Carre Commission; the New Orleans Fire Department; and the Louisiana Rating & Fire Prevention Bureau.