WARD, Judge.
On April 8, 1982, Noel, Inc, as a contractor, sold a two family residence which it built to plaintiff, Jacquelyn Frick. She lived in one half of the double, which was separated by a “party wall”. The home, located at 7844 Sun Street, was financed by Carruth Mortgage Corporation, predecessor to Mellon Financial Services Inc. The loan was insured by the Federal Housing Authority. This was originally a suit both in contract and tort for damages Mrs. Jacquelyn Frick claims she has sustained as a result of improper construction of her residence.
In 1985 plumbing in Ms. Frick’s home leaked from the party wall. A plumber she employed to fix the leak told her he could not do it because the party wall was not built in compliance with the Building Code of New *1306 Orleans. The “party wall” should have two wood studded walls with two layers of sheet-rock and should have no plumbing within the party wall. In Ms. Frick’s home, the plumbing had been installed into the party wall and there was insufficient sheetroek. Because of these deficiencies, the party wall could not serve its purpose as a fire wall.
In 1986 Ms. Frick filed suit against for damages against the City of New Orleans, its building inspector, Oliver Bayard, who died before trial, Karl Noel, the sole owner of Noel, Inc., Mellon Financial Services, and its representative, Jose Gardner, and Earl Poche, who inspected the property for the Department of Housing and Urban Development.
On July 1, 1992 the Mrs. Frick proceeded to trial against the City of New Orleans; she either settled with other defendants or did not press her claims against them. On July 2, 1992 the trial court, which had taken the matter under advisement, rendered a judgment in favor of the Mrs. Frick and against the City of New Orleans. The court awarded Mrs. Frick $36,844.10 together with legal interest from the date of judicial demand and assessed all costs of the proceedings against the City. In reasons for judgment, the trial court explained it believed the City was at fault in not properly inspecting the premises during construction and for issuing an occupancy permit while there were significant safety defects that put the premises in violation of the City Building Code.
The City of New Orleans now appeals from the judgment of the trial court, claiming the trial court erred by holding that the City owed a duty to Mrs. Frick. The City further argues that the Mrs. Frick failed to prove her damages, or if she did sustain any damages, then they should be limited to the amount required to remedy the defect in the premises.
LIABILITY OF THE CITY
The City argues that it owed no particular duty to the plaintiff under the “public duty doctrine”, relying on Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4th Cir.1977), writ denied 343 So.2d 1069, and Sunlake Apt. Residents v. Tonti Dev., 602 So.2d 22 (La.App. 5th Cir.1992) unit denied 607 So.2d 558. Both of these cases are claims for damages by fire where claimants later learned that the buildings had not been built in accordance with relevant building codes or that they had not been properly inspected for fire code violations. The courts in Dufrene and Sun-lake held that the governmental entities’ duty to properly inspect did not give rise to liability for damages sustained as a result of the subsequent fires because the duty was one owed toward the public at large and not to any of the individual plaintiffs.
Mrs. Frick relies upon Stewart v. Schmieder, 386 So.2d 1351 (La.1980) in which the Supreme Court held that the Parish of Baton Rouge was liable for damages to workmen injured while engaged in construction of a building. The Court found that Baton Rouge had a duty to detect that the plans for the building were in violation of the building code and that the design would render the building structurally unsafe. The Court further found that the duty had been breached. Finally, the Court considered whether the duty was owed only to the public at large and not to the individual plaintiffs who had been injured by the breach. The Court reviewed the “public duty doctrine” and the fact that it had come under attack in various jurisdictions. The Supreme Court did not hold that the doctrine could not be applied in Louisiana. However, it did note that there had been many exceptions made, including the liability for improper maintenance of highways and streets and liability for injuries caused by escaping prisoners during their escapes. The Court then reviewed the statute at issue and found that the duty it imposed was designed to protect a particular class of individuals of which plaintiffs were members, and held the Parish was liable for the plaintiffs’ damages.
More recently, the Louisiana Supreme Court in Fowler v. Roberts, 556 So.2d 1, 7 (La.1989) held: *1307 L.Rev. 328 (1982). The immunity for governmental bodies conferred by this doctrine was properly rejected by this court as a categorical rule in Stewart. On the other hand, the Stewart decision did not hold (and we do not here hold) that a governmental body will be liable any time a person’s injury could have been prevented by a public official’s proper performance of an inspection or similar function. The existence of a duty and the scope of liability resulting from a breach of that duty must be decided according to the facts and circumstances of the particular case. We therefore conclude that governmental agencies in the performance of governmental functions may be subjected to the imposition of certain duties, the breach of which may result in liability for damages to those injured by a risk contemplated by that duty.
*1306 The public duty doctrine involves the intellectually questionable concept that when a governmental body owes a duty to everyone, the result is a duty to no one. See Stone & Rinker, Governmental Liability for Negligent Inspections, 57 Tul.
*1307 The determination whether a particular duty should be imposed on a particular governmental agency is a policy question. ...
In Sunlake Apt. Residents v. Tonti Dev., supra, decided after Stewart and Fowler, the Fifth Circuit stated that it could find no overriding policy consideration which compelled it to impose a duty on the governmental entities because:
that not only would entail potential liability extending into the distant future and enormous financial impact on the public treasury, but also would in whole or in part relieve architects, contractors and building owners of their liability for faulty construction or construction in violation of fire and building codes and thus make the public
treasury an insurer for their negligence. This policy decision by the Fifth Circuit was unnecessary, however, because the trial court had determined that the governmental agencies’ actions or inactions were not a cause-in-fact of the damages sustained by the plaintiffs who were tenants in the apartment building. That finding was not clearly erroneous according to the appellate court.
In this case, unlike Sunlake, the trial court found the City owed a duty which breach was a cause in fact of Mrs. Frick’s damages. As a matter of policy considerations, we are not faced with the same considerations as in Sunlake. The damages here are finite, the financial impact is negligible, and architects, builders and contractors are not relieved of their liability for faulty construction. They are joint tortfeasors, under comparative fault if other parties’ negligence contributed to a Mrs. Frick’s damages, fault would be apportioned and the entire burden would not fall on the governmental agency.[1]
As to the City’s reliance on Du-frene v. Guarino, supra, the facts of that case are distinguishable. Again, in Dufrene the claimants were injured by a fire in a lounge in the French Quarter. The plaintiffs were patrons, they were not owners of the property. The policy reasons for holding that the City’s duty does not extent to patrons injured in a fire are not the same as reasons for holding the City’s duty to inspect extends to property owners who cannot repair their property because the construction did not conform to the City’s building code. In the second instance, the class is limited, and it is readily foreseeable that breach of a duty to inspect may result in faulty construction that cannot be repaired because it violates the Code. We therefore conclude that the plaintiff in this case was a member of the class to whom the City owed a duty to properly inspect the building under construction. Finally, as noted by the trial court in its reasons for judgment, the City not only breached a duty to inspect, it approved construction and it issued an occupancy certificate which Mrs. Frick relied upon.
Having found that the City owed a duty to Mrs. Frick, we now consider whether there was a breach. The contractor’s faulty construction of the party wall and plumbing was easily discoverable by inspection of the property. The City does not argue in its brief that the City’s inspector was not negligent. The expert testimony of Michael Cen-tineo, Chief Building Inspector for the City, establishes that Mr. Bayard failed to adequately inspect the property. This, however, *1308 does not, as the City argues, mean every building defect will conclusively show breach of a duty to inspect. In this case the breach was so open and obvious that we conclude there was no inspection. We affirm the trial court’s determination that the City is liable to the plaintiff.
We find merit to the City’s argument that Mrs. Frick failed to prove damages. We agree, in part, with that contention.
The trial court awarded the following damages: $2,307.55 for the down payment and closing costs in the purchase of the property, $1,500.00 for improvements made to the property, $28,036.55 for mortgage payments, and $5,000.00 for loss of credit and mental anguish.
Mrs. Frick, an employee of the City Planning Commission, testified that she spoke with contractors with whom she was acquainted regarding the possibility of remedying the defect in the party wall, and that at least one came to her home and looked at it. However, she also testified that she never obtained a contractor’s estimate of the cost of repair, and she did not produce in trial any evidence of the cost of repair.
Nor did she prove repair was impossible because the City would not approve renovations. Mr, Centineo, Chief Building Inspector, who testified that the City’s inspection was deficient, also testified that it was possible to bring the house up to code insofar as the party wall could be made to act as a fire wall. He further testified that Mrs. Frick could appeal the routine denial of a construction permit asking for a deviation from the code by showing that any proposed remedies would meet the intent of the code. Such waivers are granted routinely in the Central Business District and the French Quarter, according to Mr. Centineo. In other words, Mrs. Frick has not shown that her home was completely worthless.
Instead, Mrs. Frick attempted to prove damages by producing evidence of down payment on the purchase price, the cost of some improvements, and most importantly, what she paid to the mortgage company in monthly notes. The trial court awarded the her, exclusive of damages for mental anguish, all of these amounts totalling $31,844.00.
Additionally, although she testified that she was afraid to stay in the house because of the defects, she did not actually move from her home at the time she stopped paying the notes. By her own testimony, she remained there until the house was auctioned as a part of foreclosure proceedings. Her loss of credit rating due to the foreclosure proceeding appears to have been solely caused by a desire to force the finance company to come to a settlement and not by a fear of remaining in the home. The trial court abused its discretion in awarding damages for a loss of credit rating.
The trial court also neglected to consider the value of the occupancy of the home, which usually approximates the monthly payments in these situations. This should offset for the most part Mrs. Frick’s claims for reimbursement of monthly mortgage payments to Mellon, the mortgagee.
The original building permit for the house showed that the cost of construction was $23,110.00. The trial court award of damages for the down payment, closing costs, improvements and mortgage payments, totaling $32,644.10 was more than the cost of construction and was an abuse of discretion considering the evidence that the defects could be repaired.
The record does support an award for mental anguish, however. Mrs. Frick apparently spent a great deal of time and energy meeting with members of various governmental agencies, including the City, the Department of Housing and Urban Development, and the Veterans Administration in an attempt to determine what was wrong with the property and what assistance was available from these agencies. The trial court awarded $5,000 to the plaintiff for the loss of credit and for mental anguish; that amount is affirmed as damages for mental anguish only.
In summary, as to damages we believe the lowest possible award should reflect damages for Mrs. Frick’s down payment of the purchase price, $2,307.55, estimated costs of miscellaneous other repairs, $1,500.00, and men *1309 tal anguish, $5,000.00. Therefore, the judgment of the trial court is affirmed in so far as it casts the City in judgment as hable for damages to Mrs. Frick, and amended to award damages of $8,837.55. As amended judgment is hereby rendered in favor of Ja-quelyn Frick and against the City of New Orleans for the sum of $8,837.55. All costs of trial and appeal are assessed to the City.

AFFIRMED IN PART, AMENDED, AND RENDERED.

PLOTKIN, J., concurs in part and dissents in part.

. As to the instant case, however, the City of New Orleans filed no third-party demands nor was any evidence presented to prove the fault of another party.