h MIRIAM G. WALTZER, Judge.
STATEMENT OF THE CASE
On 27 November 1996, Mona Young and her husband, David, sued Joseph Costello, as property owner, the Sewerage and Water Board of New Orleans (SWB) and the City of New Orleans (City) for damages allegedly sustained on 11 May 1996 when she stepped into a gap between a drain and curb, obscured by tall grass. Plaintiffs claim defendants were liable in negligence and strict liability. Mr. Young sued for loss of services, companionship and consortium. The City answered, denying liability and affirmatively pleading the defenses of LSA-R.S. 9:2800, denying active or constructive notice of any defect. SWB answered, denying Lability and notice of defect, and alleging Mrs. Young’s comparative negligence or want of care.
On 5 January 1998, the trial court granted plaintiffs’ motion and order to summon Costello’s legal successor, Ashton Hardy, Administrator of the Succession of Joseph *149 M. Costello, III. On 26 January 1998, A motion for summary judgment was filed on Costello’s behalf. Shortly thereafter, Hardy filed a motion to be | ¡¡substituted for the decedent together with an answer and cross claim on behalf of the succession against SWB and the City. On 30 June 1998, Costello filed another motion for summary judgment. The trial court denied the motion on 24 July 1998, noting that the maintenance schedule for cutting grass at the accident site, Costello’s constructive notice that the grass obscured the manhole, and the length of time since grass at the site had been cut were factual issues to be resolved at trial on the merits. On 23 March 1999, plaintiffs dismissed their suit against Costello, having settled their claim with his succession. Plaintiffs reserved their rights against SWB and the City.
Following a bench trial on 28 June 1999, the trial court entered judgment for plaintiffs, apportioning fault 0% to plaintiffs, 50% to SWB and 50% to the City. The judgment awards Mrs. Young $100,000 general damages, $17,770.14 medical expenses, $35,000 future medical expenses and $800 expert witness fees. There was no award on Mr. Young’s claim.
The City filed a motion and order for suspensive appeal of the judgment on 16 September 1999. The next day, SWB filed a motion and order for suspensive appeal. Neither defendant appealed the amount of damages awarded by the trial court. Plaintiffs did not answer the appeal. On plaintiffs’ motion, the trial court on 10 January 2000 dismissed the appeal with prejudice, having found that SWB and the City failed to pay costs timely. SWB and the City moved to set aside the dismissal and reinstate their appeals. On 3 March 2000, the trial court granted RSWB’s motion to reinstate appeal On 24 May the trial court confirmed the City’s right to proceed with its appeal.
For the reasons that follow, we affirm the judgment of the trial court.
STATEMENT OF FACTS
The court specifically found Mr. and Mrs. Young and Dr. Frensilli to be credible witnesses.
The trial court found that Mrs. Young was picking up trash and cleaning the drain grate on the vacant lot next to her property at 4008 Lennox Boulevard at the time of the accident. Mrs. Young’s presence on the lot was reasonable and foreseeable. She stepped on the lot and fell in a defect in the catch basin, a gap, void or hole between the catch, basin grave and cement surrounding the manhole cover. The defect was not open or apparent.
The trial court accepted Dr. Frensilli’s conclusion that the bone bruise he discovered during surgery on Mrs. Young had been caused by a compression impact such as the fall in the catch basis. In the absence of contradictory evidence, the court concluded that Mrs. Young’s injuries were indeed caused by her fall in the vacant lot.
The trial court found Mrs. Young free of fault because there was no way she could have seen the void due to debris and grass covering it. The void was a construction defect of which both SWB and the City, having participated in the original construction, had actual and constructive knowledge.
| ¿STANDARD OF REVIEW
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La. 1/16/96), p. 4, 666 So.2d 612, 614. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be *150 disturbed on review. Where there are two permissible views of the evidence, the fact-finder’s choice between them cannot be manifestly erroneous or clearly wrong. Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967 (La.1985). Where documents or objective evidence so contradict a witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder’s finding is based on its decision to credit the testimony of one or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844-845 (La.1989).
We are instructed that before a fact-finder’s verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict, and that the record establishes the verdict is manifestly wrong. Lewis v. State through Dept. of Transp. and Development, 94-2370 (La.4/21/95), 654 So.2d 311, 314; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Although we accord deference to the fact-finder, we are | Bcognizant of our constitutional duty to review facts [1] not merely to decide if we, as a reviewing court, would have found the facts differently, but to determine whether the trial court’s verdict was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94), 639 So.2d 216, 221
Our review of the record in its entirety convinces us that the trial court’s findings are reasonable in light of that record.
FIRST SWB ASSIGNMENT OF ERROR AND SIXTH CITY ASSIGNMENT OF ERROR: The trial court erred in admitting the testimony of an architect concerning matters strictly within the expertise of engineers. FIFTH SWB ASSIGNMENT OF ERROR: The trial court erred in failing to find that the cause of the problem with the catch basin/manhole was events subsequent to their original construction.
The argument concerning the inadmissibility of the architect’s testimony is irrelevant. The trial court stated clearly and unequivocally in its reasons for judgment:
The defendant, Sewerage and Water Board, strongly contested the qualifications of plaintiffs’ expert architect. Although the Court allowed the architect to testify, the Court could ignore his testimony completely and still come to the same conclusion: this void was a construction defect. The Sewerage and Water Board’s own expert, Mr. Joseph Becker, testified that it was his opinion that there was neither concrete nor Ifigrout in the void area into which Mrs. Young stepped. Although he found it difficult to. understand how this could have happened, his observation was that if the void was a result of subsidence or external damage, the hole would not have remained as smooth and would have had to have shown some sort of crack. The ultimate opinion strongly supports the conclusion that the void existed from the time of construction. This conclusion is also based on the Court’s personal experience ... [for] almost ten years in the City Attorney’s office defending many cases involving *151 holes in streets and other city property. I never once saw a hole that was as smooth and even as this. It was a perfect rectangle. It is only logical to conclude that it was constructed and inspected improperly and was allowed to exist for almost twenty years before Mrs. Young’s unfortunate accident. [Emphasis added.]
Mr. Becker, SWB’s Principal Engineer, holds a Bachelor of Science degree in Civil Engineering and a Professional Engineering License in Civil Engineering and in Environmental Engineering. In connection therewith, he had taken and passed the Professional Engineering examination. He testified further to many years of experience in this field.
Mr. Becker testified that the discrepancy Between the plan drawing of the catch basin and manhole system and the actual system with its void of more than seven inches in depth could indicate that the system was not built according to the original plan. Mr. Becker candidly testified that he based his deposition testimony that the system as it existed at the time of the accident perhaps was not its original construction on looking at the drawing and pictures provided at the deposition. According to Mr. Becker, if the void had existed at the time of the construction, it would have had to have been allowed by several inspectors, from the SWB and from the City’s Streets Department. It would have had to have been allowed by these inspectors at the time of construction and at the time of final inspection. The large hole at the surface, Mr. Becker said, would have been fairly obvious at those 17times. He noted that although it was hard to believe the construction inspectors would have accepted the system as it appeared at the time of the accident, “At the same time, it is, you know, a completely rectangular hole. It is unusual that it would be exactly rectangular.”
Since the trier of fact did not consider the architect’s testimony, the defendants’ objection to its introduction is moot. The trial court’s conclusion that the defect existed at the time of original construction is supported by credible evidence and is not manifestly erroneous or clearly wrong.
These assignments of error are without merit.
SECOND SWB ASSIGNMENT OF ERROR: The trial court erred in failing to admit the complete deposition of Mrs. Mona Young.
SWB in brief argues that the trial court erred in allowing introduction of only those portions of Mrs. Young’s pre-trial deposition that were used in attempts to impeach her. SWB relies on Verrett v. Preston, 374 So.2d 121 (La.App. 1 Cir. 1979). That case is clearly distinguishable from the case at bar. In Verrett, the trial judge refused to allow any use of the plaintiffs pre-trial deposition on the ground that plaintiff was present in court. The first circuit court’s brief opinion remanding the case for inclusion of the deposition does not provide any information that would support a conclusion that the case would control the case at bar.
We also note that SWB’s argument does not indicate what probative value the remainder of the deposition might have. There is no allegation that the non- | sadmitted portions of the deposition in any was contradict the testimony of any party or add relevant evidence. Absent a full proffer or some indication of the material’s relevance, we find no basis for reversal.
it. This assignment of error is without mer-
*152 THIRD SWB ASSIGNMENT OF ERROR: The trial court erred in failing to find that the major injury to Mrs. Young was caused by falls subsequent to the fall for which she sued SWB.
SWB contends that Mrs. Young’s injuries were caused primarily by a fall on her stairs at home two weeks after the accident and from a ladder. Mrs. Young admitted that she did not tell her husband or doctor of the 1992 fall on Lennox Boulevard prior to the stair incident, and the trial court noted that this failure to report the incident was “troublesome for the Court.” The trial judge accepted Mrs. Young’s testimony that she originally had not wanted to worry her husband. About two weeks later, she was coming down the steps in her home when the knee she had injured in the accident gave out and she fell on her posterior, hitting her head on the stairway’s corner post. When her husband came home and found her head cut and her leg elevated, she told him about the whole series of events. A few days later, when she was still limping, someone at the Pro Shop of the English Turn Golf Club suggested that she see Dr. Frensilli, whom she had seen previously to treat a bunion. Dr. Frensilli ultimately performed surgery on her knee, which took substantially longer than expected. After surgery, the doctor asked how she hurt |9her knee and how she might have bruised her knee. This jolted her memory of the accident at the catch basin/manhole system.
Dr. Frensilli testified that the bruised bone he noticed during surgery was the result of trauma and would not have been caused by Mrs. Young’s fall down the stairs. This evidence is uncontroverted.
The fall from a stepladder occurred following the knee surgery, in August of 1996. Dr. Frensilli testified without contradiction that he did not believe that second fall would have had any significant influence or impact on Mrs. Young’s condition.
The SWB also contends that surgery in 1971 and in 1972 were “factors in the probability of need for future medical treatment.” The uncontroverted testimony of Dr. Frensilli established that in December, 1994, he saw Mrs. Young for an unrelated foot problem and the knee was asymptomatic. The trial court based the award of future medical expenses for a knee replacement on Dr. Frensilli’s unre-futed testimony that the 1971-72 procedures would not have necessitated knee replacement.
SWB also contends in brief that Dr. Frensilli was unable to say with reasonable medical certainty that Mrs. Young’s knee problems were related to the accident in question. We note from the record that this testimony was elicited in response to a question that did not relate to Mrs. Young’s right knee. Counsel for the City asked if left knee problems described by the doctor could be related to the | maccident in question with reasonable medical certainty. It is not the left knee that is at issue in this case.
This assignment of error is without merit.
FOURTH SWB ASSIGNMENT OF ERROR: The trial court erred in failing to assign a percentage of fault to Mrs. Young.
There is no evidence that Mrs. Young knew or should have known of the void into which she fell. SWB’s witness, Mr. Becker, testified on cross-examination that the void presented a serious risk of harm if someone stepped into it, and confirmed the testimony of SWB employee Roy Jackson that the area was totally obscured.
Absent any evidence of Mrs. Young’s fault, we cannot say that the trial court’s conclusion that Mrs. Young was “certainly” *153 not at fault was manifestly erroneous or clearly wrong.
This assignment of error is without merit.
SIXTH SWB ASSIGNMENT OF ERROR: The trial court erred in failing to find that the contract between the City and the SWB, as well as the city code and legislative acts on which the code is based recognize and assign to the city, not to the SWB, the ownership and responsibility for subsurface drainage and its appurtenances. THIRD CITY ASSIGNMENT OF ERROR: The trial court erred in failing to recognize that the governing contract between the lnSWB and the City imposes responsibility on the SWB for system maintenance and servicing.
Each defendant seeks to place contractual liability for Mrs. Young’s damages on the other. The only contract in evidence is Exhibit P-2, entered into between the City and SWB on 1 July 1992 and refers by its terms to maintenance obligations and new capital projects. Since the trial court correctly found that the defect in the drainage system that caused Mrs. Young’s injury existed from the date of its construction, long before the effective date of the contract in evidence, that contract is inapplicable. Furthermore, we find nothing in the record to support a claim for contractual indemnity by either party.
These assignments of error are without merit.
FIRST CITY ASSIGNMENT OF ERROR: The trial court erred in determining that the space in the catch basin, manhole and junction system was nineteen years old, and the City, as owner of the system, was responsible for the vacant space between the units.
The City’s argument concerning the custody, control and maintenance of the catch basin/manhole system is irrelevant to the liability issue since the trial court found that the defect was caused by the original construction and not by improper maintenance of the system, whoever had custody and control at the time of the accident.
| ^Furthermore, its argument that it did not own the “space” around the construction is without merit. It was the drainage system, composed of manhole, catch basin and junction, whose improper construction caused Mrs. Young’s injury, and the system was inspected and accepted, at the time that construction was completed by the City and by the SWB. We cannot say that the trial court was manifestly erroneous in dividing the liability equally between these two entities.
This assignment of error is without merit.
SECOND CITY ASSIGNMENT OF ERROR: The trial court erred in finding the City negligent for having failed to notice the system defect nineteen years previously.
The City relies on LSA-R.S. 9:2800 B, which severely limits liability of public entities. In the absence of liability under La. C.C. Art. 2317 for damages caused by the conditions of buildings within its care and custody, no liability attaches under that article for damages caused by the condition of things within its care and custody “unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.” LSA-R.S. 9:2800 C defines constructive notice as “the existence of facts which infer [sic] actual knowledge.”
The City argues that it was not aware of the defect in the catch basin/manhole system’s construction. The actual knowledge denied by the City is | ^naturally inferred from its involvement, through the Department of Streets, in the original construe *154 tion of the system. Since it was the initial construction that was defective, the fact that the City may have forgotten about the defect over the ensuing years does not relieve it of its obligation, incurred at the time of the construction, to remedy the defect. In the absence of any evidence of a subsequent material alteration of the system following its construction, the mere fact that the placement of the defective condition and the ultimate injury are not contemporaneous does not defeat plaintiffs’ claim.
This assignment of error is without merit.
FOURTH CITY ASSIGNMENT OF ERROR: The trial court erred in failing to rule that the plaintiff failed to prove the City’s actual knowledge of the alleged defect.
The trial court having properly found that the dangerous condition existed from the time of construction, the issue of actual knowledge at the time of the accident is moot. The City was aware of the condition of the area when its Streets Department inspector performed the final inspection. At that time, the City had the obligation to repair the dangerous, defective condition of the catch basin/manhole system. The knowledge it had at the time construction was completed is sufficient to satisfy the statutory knowledge requirement.
This assignment of error is without merit.
iuFIFTH CITY ASSIGNMENT OF ERROR: The trial court erred in failing to recognize that plaintiff, as a member of the general public, has no cause of action against public entities for their alleged post-completion inspection negligence, since that duty is owed only to the public at large and not to individuals.
In support of this contention, the City relies on cases involving liability for damage caused by constructions made and owned by individual property owners. In Sunlake Apartment Residents v. Tonti Development Corp., 602 So.2d 22 (La.App. 5 Cir.1992), the claim was for improper inspection of architect’s drawing which omitted fire and draft stops for a three-story wood frame apartment building. The court held that the allegedly negligent failure of the fire marshal and city inspectors to notice the omission did not cause the destruction of the building. Dufrene v. Guarino, 343 So.2d 1097 (La.App. 4 Cir. 1977) sought to hold the city responsible for a tragic fire in the French Quarter. The court refused to impose liability on the City for inadequate fire inspection of the building, which was privately owned. Similarly, in Frick v. City of New Orleans, Department of Safety and Permits, 629 So.2d 1304 (La.App. 4 Cir.1993), the issue was failure of a party wall connecting two private properties. None of the constructions involved in the cases cited by the City involve public drainage works such as the catch basin/manhole system in which Mrs. Young was injured.
This assignment of error is without merit.
J^SEVENTH CITY ASSIGNMENT OF ERROR: The trial court erred in failing to apportion liability to the former property owner.
Neither plaintiffs nor defendants introduced any evidence at trial tending to show negligence or intentional wrongdoing on the part of Mr. Costello that caused Mrs. Young’s injury. There was no evidence that the catch basin/manhole system were Mr. Costello’s property or that he had garde of the system. If the City and/or SWB were convinced that Mr. Costello was somehow at fault, it was incumbent upon them to introduce evidence of *155 his liability. There is no evidence in the record that Mr. Costello was negligent with respect to his cutting of the grass on his lot, or that his grass-cutting equipment caused the void. The trial court found, to the contrary, that the defect existed from the time the system was constructed. That condition is not attributable to Mr. Costello.
This assignment of error is without merit.
CONCLUSION AND DECREE
For the foregoing reasons, the judgment of the trial court is affirmed and the costs of this appeal are assessed equally against the Sewerage and Water Board and the City of New Orleans, appellants herein.
AFFIRMED.

. See, LSA Const. Art. 5, section 10(B).