**Dorothy J. WILSON, Individually and as Administratrix of the Estates of Barbara Gill and Shawn Gill, Appellant,**

v.

**Gregory L. NEPSTAD and Donna J. Nepstad, Individuals, Defendants,**

**and the City of Des Moines, Iowa, Appellee.**

**Janine Kay HARRIS, Individually and as Mother and Next Friend of Gary Dean Simpson, a Minor, Appellant,**

v.

**Gregory L. NEPSTAD and Donna J. Nepstad, Individuals, Defendants,**

**and the City of Des Moines, Iowa, Appellee.**

**Theodore Wayne OWENS, Individually and as Administrator of the Estates of Sharion Louise Owens and Christopher Wayne Owens, Appellants,**

v.

**Gregory L. NEPSTAD and Donna J. Nepstad, Individuals, Defendants,**

**and the City of Des Moines, Iowa, Appellee.**

**Turrill GUYETTE and Mary Lou Guyette, Individually, and Mary Lou Guyette as Mother and Next Friend of Dawn Guyette, a Minor, Appellants,**

v.

**Gregory L. NEPSTAD and Donna J. Nepstad, Individuals, Defendants,**

**and the City of Des Moines, Iowa, Appellee.**

Robert D. LOMAX, Appellant,

v.

Gregory L. NEPSTAD and Donna J. Nepstad, Individuals, Defendants,

and the City of Des Moines, Iowa, Appellee.

Nos. 61537–61541.

Supreme Court of Iowa.

July 25, 1979.

Thomas H. Mohr of Roehrick & Mohr, and James P. Piazza, Des Moines, for appellants.

Terrence A. Hopkins of Hopkins & Huebner, Des Moines, for appellee.

REYNOLDSON, Chief Justice.

These five cases, consolidated in district court for submission of motions and in this court for purposes of appeal, involve deaths and injuries resulting from a September 27, 1975, apartment building fire in Des Moines. Plaintiffs sued Gregory L. and Donna J. Nepstad, owners of the building, and the City of Des Moines.

Plaintiffs alleged statutes and ordinances relating to building codes, occupancy permits, and fire regulations required the city to perform inspections, issue certificates and permits for apartment buildings, and compel compliance. The petitions asserted the city was negligent in various ways in executing these provisions as to this building. Plaintiffs alleged the city inspected it in a negligent manner in February of 1975 and issued an inspection certificate "which impliedly warranted the premises to be safe for the purposes of human habitation." Plaintiffs ultimately alleged that as a result of either the city's negligent conduct or its breach of warranty the victims were killed or injured. The victims were alleged to be residents or guests in the building.

The city filed motions to dismiss in four cases and motion for judgment on the pleadings in the fifth, contending it had no duty of care toward the fire victims. Trial court sustained these motions and plaintiffs timely appealed. We reverse and remand.

I. While the issue has not been raised we have examined the question whether trial court's dismissals as to the city are appealable final judgments.

Although disposition of part of a petition is interlocutory, *Shoemaker v. City of Muscatine*, 275 N.W.2d 206, 208 (Iowa 1979), disposition of all causes of action against one or more defendants is final and appealable if those causes are "separable by some distinct line of demarcation" from the causes pled against the remaining defendants in the same petition. *McGuire v. City of Cedar Rapids*, 189 N.W.2d 592, 596–97 (Iowa 1971).

In these petitions the bases of liability asserted against the city are not dependent upon or intertwined with the bases of liability asserted against the Nepstads. *See Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299, 303 (Iowa 1975); *Lunday v. Vogelmann*, 213 N.W.2d 904, 906 (Iowa 1973).

We find the dismissals as to the city are appealable. We have jurisdiction to reach the merits of these appeals.

II. Thus we reach the issue whether under Iowa law the city can be held liable for negligent inspections conducted pursuant to state statutes and city ordinances regarding fire safety in apartment buildings.

Plaintiffs do not pursue the breach of warranty theory. The city apparently is willing to treat the motion for judgment on the pleadings in the same manner as the motions to dismiss in the other four cases. *See* Iowa R. Civ.P. 222.

A. For the purposes of these appeals, therefore, allegations of plaintiffs' petitions are accepted as true. *Citizens for Washington Square v. City of Davenport*, 277 N.W.2d 882, 883–84 (Iowa 1979). These allegations are construed in the light most favorable to plaintiffs, with all doubts resolved for their benefit and all favorable inferences accepted. *Id.; Weber v. Madison*, 251 N.W.2d 523, 525 (Iowa 1977); *Rick v. Boegel*, 205 N.W.2d 713, 715 (Iowa 1973).

Accordingly, we assume the city had certain statutory duties to inspect this apartment building and was negligent in its inspections, which proximately caused the deaths and injuries to the victims.

B. Plaintiffs' contention the city committed a tort is two-pronged. They alternatively posit liability on (1) a breach of the common-law duty of reasonable care, and (2) breach of various statutory duties relating to building and fire safety inspection. The second ground is dispositive for purposes of this appeal.

■ A prerequisite to any negligence action is a duty or obligation owed by the actor to the victim. *Jahnke v. Incorporated City of Des Moines*, 191 N.W.2d 780, 783 (Iowa 1971); W. Prosser, *Handbook of the Law of Torts* §§ 30, at 143, 53, at 324 (4th ed. 1971).

■ Duty can be created by statute if the legislature purposed or intended to protect a class of persons to which the victim belongs against a particular harm which the victim has suffered. *Koll v. Manatt's Transportation Co.*, 253 N.W.2d 265, 270 (Iowa 1977) (quoting *Hansen v. Kemmish*, 201 Iowa 1008, 208 N.W. 277 (1926)); *Crane v. Cedar Rapids & Iowa City Railway*, 160 N.W.2d 838, 841 (Iowa 1968), *aff'd*, 395 U.S. 164, 89 S.Ct. 1706, 23 L.Ed.2d 176 (1969); *Lattner v. Immaculate Conception Church*, 255 Iowa 120, 129, 121 N.W.2d 639, 645 (1963); W. Prosser, *supra*, at 192–95.

The city does not disavow its duties under the statutes and ordinances but denies these obligations created a duty of reasonable care. It contends the applicable state and municipal inspection laws are designed to protect the public generally and do not create a duty of care to these individual plaintiffs.

The city relies on decisions from several other jurisdictions. *Duran v. City of Tucson*, 20 Ariz.App. 22, 509 P.2d 1059 (1973); *Modlin v. City of Miami Beach*, 201 So.2d 70 (Fla. 1967); *Hannon v. Counihan*, 54 Ill. App.3d 509, 12 Ill.Dec. 210, 369 N.E.2d 917 (1977); *Grogan v. Commonwealth*, 577 S.W.2d 4 (Ky. 1979); *Dufrene v. Guarino*, 343 So.2d 1097 (La.App. 1977); *Hoffert v. Owatonna Inn Towne Motel, Inc.*, 293 Minn. 220, 199 N.W.2d 158 (1972); *Motyka v. City of Amsterdam*, 15 N.Y.2d 134, 256 N.Y.S.2d 595, 204 N.E.2d 635 (1965); *Georges v. Tudor*, 16 Wash.App. 407, 556 P.2d 564 (1976).

In most of these cases the sovereign was held not liable on one or both of two grounds. The first is the concept there should be no liability for failure to provide general police or fire protection. The second is the related "public duty" doctrine—the notion that if a duty is owed to the public generally there is no liability to an individual member of that group. Neither factor can properly be urged in this case.

Moreover, the trend in this area is toward liability. The "public duty" doctrine has lost support in four of the eight jurisdictions relied upon by the city. *Modlin* has not survived the Florida legislature's recent abrogation of sovereign immunity. *See Department of Health & Rehabilitative Services v. McDougall*, 395 So.2d 528, 532 (Fla. App. 1978). The support the city finds in *Georges* is undermined by *Halvorson v. Dahl*, 89 Wash.2d 673, 676, 574 P.2d 1190, 1192 (1978) ("Liability can be founded upon a municipal code if that code by its terms evidences a clear intent to identify and protect a particular and circumscribed class of persons."). *Motyka* turned on "failure to supply adequate police or fire protection," 15 N.Y.2d at 139, 256 N.Y.S.2d at 598, 204 N.E.2d at 637, and expressly did not modify the holding in *Runkel v. City of New York*, 282 A.D. 173, 177, 123 N.Y.S.2d 485, 489 (1953), *appeal on remand sub nom. Runkel v. Homelsky*, 286 A.D. 1101, 145 N.Y.S.2d 729 (1955), *aff'd*, 3 N.Y.2d 857, 166 N.Y.S.2d 307, 145 N.E.2d 23 (1957) ("Plaintiffs [injured by collapse of three-story multiple dwelling] come within the class of persons intended to be protected by these statutory provisions [imposing mandatory duty to abate as nuisance]; consequently, they may sue to recover damages caused by defendants' breach of such provisions . . . ."). The effect of *Hoffert* was severely limited in *Lorshbough v. Township of Buzzle*, 258 N.W.2d 96, 102 (Minn.1977):

[A] governmental unit owes a particular individual a duty of care when its officer or agent, in a position and with authority to act, has or should have had knowledge of a condition that violates safety standards prescribed by statute or regulation, and that presents a risk of serious harm to the individual or his property. When such serious injury is reasonably foreseeable, the governmental unit has a duty to exercise reasonable care for the individual's safety.

The state of Minnesota law after *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801 (Minn. 1979), quoted in the special concurrence, is at best unsettled.

Other jurisdictions have recognized the growing trend toward imposing liability upon governmental units for negligence in execution of statutory duties. *Royal Indemnity Co. v. City of Erie*, 372 F.Supp. 1137 (W.D.Pa. 1974) (Pennsylvania law); *State v. Jennings*, 555 P.2d 248 (Alaska 1976); *Adams v. State*, 555 P.2d 235 (Alaska 1976); *Sexstone v. City of Rochester*, 32 A.D.2d 737, 301 N.Y.S.2d 887 (1969); *Coffey v. City of Milwaukee*, 74 Wis.2d 526, 247 N.W.2d 132 (1976); *Dutton v. Bognor Regis Urban District Council*, [1972] 1 Q.B. 373.

Of all the cases finding liability, only *Halvorson, Runkel, Lorshbough, Sexstone*, and *Dutton* reach the issue of negligence in the discharge of statutory obligations. As the special concurrence points out, a few others are based on affirmative conduct: negligence in the discharge of a duty voluntarily undertaken. But none of these cases advance the notion that statutes and ordinances similar to those of Iowa and Des Moines create a duty only to the public generally. Typical is Alaska's treatment of the problem in the context of affirmative conduct:

Is the common law duty described above owed to the plaintiffs or their decedents, victims of the fire? We think clearly so. The purpose of fire inspection is to protect life and property from fire; the purpose of the Gold Rush inspection was to discover and alleviate fire hazards endangering users of the hotel. Plain-

tiffs or their decedents were members of that class; they were the intended beneficiaries of the inspection services provided and the foreseeable victims of the fire hazards left uncorrected. From the facts as we must take them, the injuries of which the plaintiffs complain were the obvious consequences of the risks taken by the hotel management. The logical consequence of not having a fire alarm is escape made difficult or impossible from a fire discovered too late.

Thus, if the defendant were considered a private entity, its duty to the plaintiffs or their decedents would be clear . . . .

The state, however, raises an argument based upon its special public status. Its theory, and one traditionally recognized, is that an entity such as the state, which owes only a duty to the public generally, does not owe an actionable duty to any individual. Although this is a well-respected doctrine, we do not find it applicable here for two reasons.

First, the common law duty . . . is not one owed to the general public, nor is it expressly based upon the mandates of the fire inspection statutes. The duty is a limited one, and its beneficiaries a limited class. In undertaking to inspect and advise on the conditions in the Gold Rush, the state undertook a duty to those injured by the burning of the hotel, not to the public in general.

Second, we consider that the "duty to all, duty to no-one" doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute in Alaska, and not to be amplified by court-created doctrine. An application of the public duty doctrine here would result in finding no duty owed the plaintiffs or their decedents by the state, because, although they were foreseeable victims and a private defendant would have owed such a duty, no "special relationship" between the parties existed. Why should the establishment of duty become more difficult when the state is the defendant? Where there is no immunity, the state is to be treated like a private litigant. To allow the pub-

lic duty doctrine to disturb this equality would create immunity where the legislature has not.

*Adams,* 555 P.2d at 241–42 (footnotes omitted).

However, it is the specific and novel language of the Iowa statutes, clearly indicating a legislative intent to impose liability under these admitted circumstances, which distinguishes Iowa law from that found in the decisions relied on by the city.

A meaningful analysis must include an examination of three applicable statutes:

Except as otherwise provided in this chapter, every municipality is subject to liability for its torts *and those of its officers, employees,* and agents *acting within the scope of their* employment or *duties,* whether *arising out of a governmental* or proprietary *function.*

A tort shall be deemed to be within the scope of employment or *duties if the act or omission reasonably relates to the business or affairs of the municipality* and the officer, employee, or agent acted in good faith and in a manner a reasonable person would have believed to be in and not opposed to the best interests of the municipality.

§ 613A.2 (emphasis supplied).

"Tort" means every civil wrong which results in wrongful death or injury to person or injury to property or injury to personal or property rights and includes but is not restricted to actions based upon negligence; error or omission; nuisance; *breach of duty, whether statutory or other duty* or denial or impairment of any right under any constitutional provision, statute or rule of law.

§ 613A.1(3) (emphasis supplied). Section 613A.4(3), exempts a municipality from liability for

[a]ny claim based upon an act or omission of an officer or employee, *exercising due care, in the execution of a statute, ordinance,* or officially adopted resolution, rule, or regulation of a governing body.

(Emphasis supplied.)

█ Read together, the above Iowa statutes plainly impose liability upon a municipality for torts committed by its employees while acting within the scope of their duties. The statutory scope covers tortious acts and omissions reasonably related to municipal business or affairs. Breach of an actionable duty created by statute is tortious conduct under chapter 613A. Only when an employee exercises due care in executing statutory duties is the municipality exempt from liability. The legislature could not have expressed better or more consistently its intention to impose—in the same manner as in the private sector—municipal tort liability for negligence based on breach of a statutory duty.

This court has often said chapter 613A "created a new right of action." *Sprung v. Rasmussen,* 180 N.W.2d 430, 433 (Iowa 1970); *see Bennett v. Ida County,* 203 N.W.2d 228, 235–36 (Iowa 1972); *Harryman v. Hayles,* 257 N.W.2d 631, 636 (Iowa 1977). When we accept chapter 613A with its unique language as a "statute of creation," *Sprung,* 180 N.W.2d at 433, then decisions from other jurisdictions should have little impact on the determination we reach today. *Compare with Duran,* 20 Ariz.App. at 24, 509 P.2d at 1061 ("Abrogation of the doctrine of governmental immunity . . . does not create any new liability for a municipality.").

We have examined with care the city's authorities in an unsuccessful attempt to find statutory language similar to the above Iowa statutes. In *Modlin* (Florida), *Grogan* (Kentucky), and *Dufrene* (Louisiana), there are no indications that liability was sought to be imposed under any statutory formula or definition of tort. It is clear that in Florida and Kentucky municipal tort immunity was struck down by the courts and not by the legislatures. In Louisiana a 1974 constitutional provision simply provides: "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." La. Const. art. 12, § 10. *Duran* (Arizona) and *Hannon* (Illinois) turned in part on specific ordinances and statutes *granting* immunity

for negligent inspection or failure to inspect property, 20 Ariz.App. at 26, 509 P.2d at 1063; Ill.Rev.Stat. ch. 85, §§ 2–105, 2–207, a clear legislative signal that in absence of such enactments liability would be imposed. While some statutory references may be found in the remaining three cases, *Hoffert* (Minnesota), *Motyka* (New York), and *Georges* (Washington), those statutes neither impose liability for employees' tortious conduct relating "to the business or affairs of the municipality" nor define tort in terms of breach of statutory duty. *See* Minn.Stat. §§ 466.01, .02; N.Y.Jud.Law, Court of Claims Act § 8; Wash.Rev.Code §§ 4.96.-010–.020.

Notwithstanding the clear trend of case law and unmistakable legislation, the city argues the "public duty" dichotomy is the law in Iowa, a proposition the special concurrence seems to accept. Both rely heavily on *Jahnke v. Incorporated City of Des Moines*, 191 N.W.2d at 785–86, despite several important differences between that situation and the present one.

First, *Jahnke* addressed and was limited to an esoteric area of law—municipal liability for injuries caused by mob violence. *See* 63 C.J.S. *Municipal Corporations* § 773a (1950). In *Jahnke* we said:

> We therefore limit our discussion to the issue upon which the petition must stand or fall—liability of the city for negligent failure to protect plaintiff from personal injuries by reason of mob violence or riotous conduct.

191 N.W.2d at 782. The problem was resolved in the context of " 'failure to supply general police and fire protection,' " 191 N.W.2d at 785, 786, just as were several of the other decisions relied on by the city. Of course, the pleadings in the cases before us do not allege a failure to supply "general police or fire protection." Plaintiffs allege negligence in carrying out routine inspection duties imposed by law.

Moreover, following *Jahnke* chapter 613A was amended extensively. 1974 Session, 65th G.A., ch. 1263. Among the amendments was the inclusion of breach of statutory duty in the definition of "tort,"

§ 613A.1(3) ("whether statutory or other duty"), and the addition of the second unnumbered paragraph in section 613A.2 to extend liability to tortious conduct by employees relating to "the business or affairs of the municipality." Legislative reaction to our indemnification cases, one apparent basis for the 1974 amendment, did not require a change in the section 613A.1(3) definition of tort. Neither *Vermeer v. Sneller*, 190 N.W.2d 389 (Iowa 1971), nor *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613 (Iowa 1973), involved any tort based on breach of statutory duty, but *Jahnke* did. The change in section 613A.1(3), and perhaps other sections, appears to be a legislative response to *Jahnke*.

The court recognized these changes in *Symmonds v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 242 N.W.2d 262, 264 (Iowa 1976), in which trial court's dismissal of the railroad's counterclaim against Scott County was reversed. We also held that the county's jurisdiction over secondary roads and statutory authority to place stop signs at particularly dangerous railroad crossings imposed an affirmative obligation to act when due care required it:

> In reviewing trial court's dismissal ruling we assume this crossing was, as alleged, a particularly dangerous crossing. We assume as a fact Scott County knew or should have known it constituted a hazard. No railroad signaling device was in place. To hold under these circumstances, as a matter of law, the county should be immune from liability for failing to post a stop sign in a situation clearly entailing foreseeable harm or damage to persons traveling on its secondary road would be against logic, sound reason, and enlightened public policy.

242 N.W.2d at 265 (citation omitted).

Recognition of liability for breach of a statutory duty designed to protect a particular—albeit large—segment of the general public continued in *Harryman v. Hayles*, 257 N.W.2d at 631. There this court analyzed the potential liability of a county, its employees, and officers arising out of an alleged breach of statutory duty with regard to highway and road maintenance:

We believe the trial court was wrong, too, in its conclusion the individual defendants owed no duty to plaintiffs. The cases upon which that theory depends are also based on governmental immunity. For example, in *Genkinger v. Jefferson County*, [250 Iowa 118, 120, 93 N.W.2d 130, 132 (1958)], the court held the statutory duty of a county engineer to maintain roads in a safe condition was "owing to the general public and not to any certain individual or this decedent, except as such individual is a part of the general public." In this situation, the court said, "the *immunity* of the County extends to the employee." [Emphasis added in *Harryman.*]

We hold the abrogation of governmental immunity means the same principles of liability apply to officers and employees of municipalities as to any other tort defendants, except as expressly modified or limited by the provisions of Chapter 613A. In that regard we take § 613A.4(3) to mean simply that there is no liability for the acts of an officer or employee unless there is negligence. . .

.       .       .       .       .

In this case, the Board of Supervisors and county engineer clearly had a duty to maintain the county roads in proper condition. §§ 309.67, 319.1, 319.7, The Code, 1971. This duty runs to all those rightfully using the roads. *Cf. Conrad v. Board of Supervisors*, 199 N.W.2d 139, 144 (1972). A breach of that duty can occur either by negligent commission or omission. Whether the duty was breached, and if so, whether it was a proximate cause of the injuries, are matters to be determined at trial.

257 N.W.2d at 638.

There is no need in this case to decide whether *Jahnke* survived intact the 1974 amendments, *Symmonds,* and *Harryman.* In light of these developments, however, it cannot be said that *Jahnke* is the rule and *Symmonds* and *Harryman* the exceptions. *Harryman* and *Symmonds* make it clear a municipality is liable for tortious commissions and omissions when authority and control over a particular activity has been delegated to it by statute and breach of that duty involves a foreseeable risk of injury to an identifiable class to which the victim belongs. The duty in those cases ran "to all those rightfully using the roads," *Harryman,* 257 N.W.2d at 638, and "to the traveling public," *Symmonds,* 242 N.W.2d at 265. A statutory duty designed to protect something larger than an identifiable class of persons is the exception, not the rule.

This conclusion is consistent with the rule applied in the private sector: "A general statutory duty is ordinarily for the benefit of all persons who are likely to be exposed to injury from its nonobservance." *Hansen v. Kemmish,* 201 Iowa at 1012, 208 N.W. at 279.

It is also consistent with authority such as *Case v. City of Sioux City*, 246 Iowa 654, 69 N.W.2d 27 (1955), and *Restatement (Second) of Torts* § 288 (1965), both cited by the special concurrence.

In fact, *Case* is clearly distinguishable because it dealt with the landowner's liability, not the municipality's. The court did *not* hold the municipality was not liable for injuries caused by snow accumulation on sidewalks. Other cases hold that in some situations it would be, a result which is consistent with *Harryman* and *Symmonds.* *See, e. g., Franks v. Sioux City*, 229 Iowa 1097, 296 N.W. 224 (1941). The basis of decisions such as *Case* is that the landowner is given no control over public sidewalks. *See Rockafellow v. Rockwell City*, 217 N.W.2d 246, 248 (Iowa 1974). The city does not contend it had no right of inspection or jurisdiction to enforce state statutes and its own ordinances designed to protect apartment building tenants.

*Restatement* section 288 only recognizes the need to show the purpose of the statutory duty is to benefit an identifiable class of persons. Only when securing "to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public" is the *exclusive* purpose of the statutory duty does section 288(b) preclude liability.

■ Therefore, we must examine the duties created by statutes and ordinances involved in this case.

From specifications of negligence in plaintiffs' amended petitions we infer and assume as facts these deaths and injuries occurred in a multistory apartment building. Among other defects there were inadequate means of egress; obstructions and encumbrances on fire escapes, stairs and passageways; dangerous materials stored on, under, or at the bottom of exit stairways, exit hallways and other means of egress. There was inadequate lighting of stairways, hallways and other means of egress; absence of suitable fire detecting devices and extinguishing appliances; and no immediate access from each dwelling unit located on the second floor and above to two or more means of egress. All these defects violated specifically pled city ordinances. Violation of several unspecified state statutes was also alleged. *See* Chs. 103, 103A, 413, The Code.

These ordinances and statutes obviously were designed for the protection of a special, identifiable group of persons—lawful occupants of multiple dwellings—from a particular harm, injury or death from fire. *Adams*, 555 P.2d at 241; *Lorshbough*, 258 N.W.2d at 102; *Campbell v. City of Bellevue*, 85 Wash.2d 1, 13, 530 P.2d 234, 241 (1975); *Halvorson*, 89 Wash.2d at 676, 574 P.2d at 1192. They do not fall within the principle of *Restatement* section 288(b). Their *exclusive* purpose is not securing rights or privileges to which all members of the public are entitled. The specificity of statutes relating to fire escapes and exits together with the location, classification, construction, arrangement, signing, and lighting thereof, §§ 103.3–.9, coupled with statutory directions to municipal inspectors to "carefully inspect" for violations and serve notice on noncomplying owners, §§ 103.13–.17, evidences a purpose to protect occupants of multi-family dwellings and other specified structures (the only persons endangered by faulty or nonexistent fire escapes or exits), not members of the public generally.

The *contours of the city ordinances*, as disclosed by the amended petition, are similarly designed to protect apartment tenants. *See, e. g.,* Ordinance No. 7156 (requiring all stairways, hallways, and other means of egress to be adequately lighted and free of encumbrances; forbidding encumbrances upon fire escapes *which would obstruct egress of persons from the building*; requiring the fire marshall or his inspector to order the removal or correction of any obstruction to or on fire escapes or other means of egress).

These ordinances and statutes impose on the city and its employees the authority *and* duty to require correction of these defects. *Symmonds.* The purpose of this duty cannot be distinguished from those in *Harryman* and *Symmonds.* There is no greater nexus between Lee and Scott Counties and persons using their roads than the nexus between Des Moines and its citizens residing in multiple dwellings. The latter class is probably smaller.

The special concurrence advocates an anomalous and ironic result: A duty relating to public roads—open to and utilized by all citizens—is actionable because it protects an identifiable class of persons, but a duty relating to private dwellings—open only to and utilized only by tenants and guests—is not actionable because it benefits the general public. This points up the problem of mere result-oriented application of "duty" or "no duty" labels. This court has discussed the dangers of applying such conclusions in lieu of examining whether conduct is reasonable in light of the apparent risk and whether a particular plaintiff is entitled to protection. *Wittrup v. Chicago & Northwestern Railway*, 226 N.W.2d 822, 823–24 (Iowa 1975).

Nor will our decisions permit the special concurrence to be interpreted to require an express legislative imposition of liability for negligent inspection. In *Bauman v. City of Waverly*, 164 N.W.2d 840, 846 (Iowa 1969), a statutory duty was posited on "permissive authority in chapter 376 to establish and maintain the public comfort station where plaintiff was injured." Referring to duty,

we there said, "It is the *delegation of power* which establishes that." *Id.* at 847 (emphasis in the original). There is no question but that the legislature has delegated to the city's inspectors the power to inspect premises and insure compliance with statutory provisions relating to fire escapes and exists. *See, e. g.,* §§ 103.13 ("The building inspector or other officer performing like duties . . . shall inspect all fire escapes within their respective jurisdictions."); 103.14 ("*Powers and duties.* Such inspection officers shall as often as necessary . . . carefully inspect and examine such fire escapes, and such inspection shall include all paths or routes between any interior passage to a lower floor and the opening and means of access to the said fire escapes, and the signs, lights, exits and means of escape of all buildings required to be equipped with fire escapes . . . and shall have the power to make all reasonable requirements . . . with respect to fire escapes, protection from fire, and means of escape from buildings."); 103.15 ("duty" of inspector to serve written notice on owner of statutory violations); 103.17 (following notice, a noncomplying owner is subjected to a fine; each week of neglect "to comply with such notice, order or requirement shall constitute a separate offense").

Such legislative direction to "*carefully* inspect" and imposition of a "*duty*" to notify owners of violation and compel compliance with these provisions are a stronger foundation on which to posit a legal duty than we have found sufficient in our prior decisions. *See Bauman; Florey v. City of Burlington,* 247 Iowa 316, 323–24, 73 N.W.2d 770, 774 (1955).

The record at this stage discloses nothing which indicates the statutes and ordinances do not create actionable duties. Every indication, in fact, is to the contrary. We hold it cannot be determined, as a matter of law on motions to dismiss, that plaintiffs' petitions failed to state a cause of action be-

cause the city owed no duty to occupants of the apartment building in question.

■ Plaintiffs' other asserted basis of liability deserves further comment. They alleged that not only did the city fail to perform its duty to enforce these statutes and ordinances, but that following a February 7, 1975, inspection of the apartment building its agents on February 17, 1975, issued a certificate the premises complied with the "Health and Safety Housing Code of the City of Des Moines."

In *Harryman* we held "abrogation of governmental immunity means the same principles of liability apply to officers and employees of municipalities as to any other tort defendants, except as expressly modified or limited by the provisions of Chapter 613A." 257 N.W.2d at 638. In the absence of an immunizing statute, we have held squarely that an insurer may be liable for negligent inspection gratuitously undertaken. *Fabricius v. Montgomery Elevator Co.,* 254 Iowa 1319, 121 N.W.2d 361 (1963).[1] The *Fabricius* rule is applicable here because plaintiffs make an even stronger case: The city's duty to inspect and rectify hazards is imposed by statutes and ordinances and is not undertaken gratuitously. *Symmonds,* 242 N.W.2d at 265–66.

Defendant insurer in *Fabricius* raised the same policy argument asserted here by the city against both grounds pled by plaintiffs—a threat to withdraw from inspection if its negligence should result in liability. There we said:

Defendant strongly urges what it calls practical effects and sound public policy. It suggests curtailment of inspection by insurers . . . . Plaintiff's answer is, no inspection is better than a negligent one. We are inclined to agree.

254 Iowa at 1327, 121 N.W.2d at 366. Municipalities are not going to be motivated toward meaningful inspections while insulated from their employees' negligence with

---

1. Although insurers later successfully sought statutory relief, *see Bowen v. Kaplan,* 237 N.W.2d 799, 801 (Iowa 1976), *Fabricius* stands as the Iowa law in absence of a statute abolish-

ing the common-law right of action against private tortfeasors. *See also Restatement (Second) of Torts* §§ 323, 324A (1965).

respect to these statutory duties. In the event of withdrawal, the void might be filled by private agencies whose certificates could be relied on by persons risking their lives and property in multiple dwelling apartments.

We also are unimpressed by policy arguments urged in some cases (but not here) that failure to exempt the municipality from its negligence would have a disastrous financial impact. *See Dufrene,* 343 So.2d at 1099–100. In the first place, the municipality may be entitled to recover over against the offending property owner. *See Runkel v. Homelsky,* 286 A.D. at 1101–02, 145 N.Y.S.2d at 730. Second, the potential fiscal threat here is minimal compared with the exposure which arises from our refusal in *Harryman* and *Symmonds* to immunize the municipality from its negligence in fulfilling its statutory duties relating to streets and roads. That these are cases of first impression in Iowa is some indication these situations will arise only infrequently. Third, it is not at all clear that fiscal disaster is inevitable or even likely under any of these circumstances. *See Hicks v. State,* 88 N.M. 588, 590, 544 P.2d 1153, 1155 (1975); *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 394–96, 388 A.2d 709, 714–15 (1978).

Most important, however, is the fact that financial consequences of legislation must be the primary responsibility of the legislature and cannot weigh heavily in the court's function of interpreting statutory language. We have no reason to believe our legislature did not weigh those factors when enacting and amending chapter 613A. Allowing understandable concerns over fiscal effects to control statutory interpretation will destroy carefully constructed legislation.

Trial court's ruling is reversed and these cases are remanded for further proceedings consistent herewith.

REVERSED AND REMANDED.

All Justices concur except McCORMICK, LeGRAND and McGIVERIN, JJ., who concur specially, and ALLBEE, J., who takes no part.

McCORMICK, Justice (concurring specially).

I am unable to agree that municipal inspection statutes and ordinances invariably create a duty to those who live in the premises inspected.

In these cases plaintiffs do not set forth the provisions of statute and ordinance relied upon as imposing such a duty. The statutes are not cited and the ordinances relied upon are not before us. Consequently, resolving all pleading doubts in their favor, we are unable at this stage of the cases to say it appears to a certainty plaintiffs have failed to state claims upon which any relief may be granted under any supportive state of facts which could be proved. *See Weber v. Madison,* 251 N.W.2d 523, 525 (Iowa 1977). On that basis I concur in the result.

However, I do not believe anything in our cases or in Code chapter 613A either requires or justifies a *carte blanche* holding that municipal inspection statutes and ordinances create a duty to individuals. Rather, I believe such statutes and ordinances ordinarily reflect an effort by government to require owners of private property to meet their responsibilities. *See Grogan v. Commonwealth,* 577 S.W.2d 4, 5 (Ky.1979) ("But in the enactment of laws designed for the public safety a governmental unit does not attempt to perform the task; it attempts only to compel others to do it, and as one of the means of enforcing that purpose it may direct its officers and employees to perform an inspection function."). In so doing, the laws serve the public at large rather than any particular group or class. *See, e. g.,* § 103A.2, The Code 1979 ("[I]t is the policy of the state of Iowa to insure the health, safety, and welfare of its citizens through the promulgation and enforcement of a state building code."); § 413.9 ("The provisions of this chapter shall be held to be the minimum requirements adopted for the protection of health, welfare, and safety of the community."). They usually do not purport to make the municipality itself responsible for defects in the premises.

This has been the view of the vast majority of courts which have confronted the issue. The general rule is stated in *Cracraft v. City of St. Louis Park*, 279 N.W.2d 801, 806 (Minn.1979):

> We hold . . . that a municipality does not owe any individual a duty of care merely by the fact that it enacts a general ordinance requiring fire code inspections or by the fact that it undertakes an inspection for fire code violations. A duty of care arises only when there are additional indicia that the municipality has undertaken the responsibility of not only protecting itself, but also undertaken the responsibility of protecting a particular class from the risks associated with fire code violations.

As noted, an exception exists when the inspection statute by its terms shows an intent to identify and protect a particular class of persons. *See Halvorson v. Dahl*, 89 Wash.2d 673, 574 P.2d 1190 (1978) (statute identifying its purpose as an enactment for the benefit of occupants of a building as well as the public). Whether plaintiffs can bring themselves under the exception noted in *Cracraft* and *Halvorson* cannot be determined without knowing the provisions of the statutes and ordinances they are relying on.

Other courts have held a duty to individuals may arise from affirmative conduct. *See Royal Indemnity Co. v. City of Erie*, 372 F.Supp. 1137 (W.D.Pa.1974); *State v. Jennings*, 555 P.2d 248 (Alaska 1976); *Adams v. State*, 555 P.2d 235 (Alaska 1976); *Restatement (Second) of Torts* § 324A (1965). Like our own case of *Fabricius v. Montgomery Elevator Co.*, 254 Iowa 1319, 121 N.W.2d 361 (1963), those cases involve common-law rather than statutory liability. Whether plaintiffs can prove a common-law basis for recovery in these cases depends upon their proof.

This court applied the general rule in *Jahnke v. Incorporated City of Des Moines*, 191 N.W.2d 780 (Iowa 1971), and did not depart from it in *Symmonds v. Chicago, Milwaukee, St. Paul & Pacific Railroad*, 242 N.W.2d 262 (Iowa 1976), or *Harryman v. Hayles*, 257 N.W.2d 631 (Iowa 1977). In *Jahnke* the court recognized that an actionable tort depends upon the existence of a duty running from the alleged wrongdoer to his victim. It held that Code chapter 613A did not create municipal liability upon claims where a duty runs to the public at large but not to any individual plaintiff. By contrast, in *Symmonds* and *Harryman* the court held that particular statutes involved in those cases did create duties to individuals, travelers on the streets. Those cases come within the *Halvorson* principle and are not based upon a finding that chapter 613A created new torts.

The general principle to which we adhered before today is expressed in *Restatement (Second) of Torts* section 288(b) (1965), as follows:

> The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively
>
> .        .        .        .        .
>
> (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public; . . .

Comment c to this section provides:

> Other legislative enactments and regulations are intended only for the purpose of securing to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm. Thus a statute may be intended only to secure the public right of unobstructed passage on the public highway, or freedom from excessive noise or immoral conduct in the community. Under some circumstances, where an individual has been interfered with in his exercise of such a public right, and as a result has suffered special harm, distinct from that suffered by the rest of the community, he may be entitled to maintain a tort action for the violation. See, as to public nuisances, §§ 821B and 821C. In the ordinary case, however, harm suffered by such an individual is not within

the purpose of the provision, and the statute or regulation will be not taken to lay down a standard of conduct with respect to such harm.

The comment recognizes the principle followed in *Jahnke* and the exception followed in *Symmonds* and *Harryman*.

This limitation has not been confined to government as opposed to private duties. We have applied *Restatement* section 288(c) which provides that statutory breaches are not actionable when the statutory purpose is exclusively "to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public." Under this principle we have held that statutes or ordinances which require the abutting property owner to repair defects in, or remove snow from, the public sidewalk are for the benefit of the government and not for the benefit of the traveling public. Despite the foreseeability of risk of injury to travelers when this duty is breached, the lot owner is not liable to an injured person. *See Case v. City of Sioux City*, 246 Iowa 654, 69 N.W.2d 27 (1955); *Restatement*, Illustration 6 at 32.

Nothing in Code chapter 613A purports to make every breach of statutory duty by a municipal officer, employee or agent a tort. The definition of "tort" in section 613A.1(3) contains nothing unusual. It does not say all breaches of statutory duty are actionable torts. Rather it gives a traditional definition of tort which "includes but is not restricted to actions based upon negligence; error or omission; nuisance; breach of duty, whether statutory or other duty or denial or impairment of any right under any constitutional provision, statute, or rule of law." It is illogical to say that because a tort action may be based upon breaches of statutory duty all breaches of statutory duty are actionable torts.

Similarly, the liability of the municipality for the torts of its officers, employees and agents during the course of their employment provided for in section 613A.2 presupposes the commission of an actionable tort. It does not expand conduct which is deemed tortious.

Finally, the exemption of liability in section 613A.1(3) for acts or omissions while exercising due care is hardly an affirmative provision imposing liability on the municipality for all other acts or omissions, regardless of the existence of a duty running to the claimant.

The 1974 amendment to chapter 613A did not create duties which did not previously exist. Instead, the changes in the definition of tort and provisions regarding indemnification appear to be a legislative response to this court's decisions in *Vermeer v. Sneller*, 190 N.W.2d 389 (Iowa 1971), and *Flynn v. Lucas County Memorial Hospital*, 203 N.W.2d 613 (Iowa 1973). The legislature redefined tort and notice provisions from a desire to make the chapter applicable to all situations, whether arising from statute or common law, where the municipality had a duty to indemnify. *See Roberts v. Timmins*, —— N.W.2d —— (Iowa 1979); *Harryman*, 257 N.W.2d at 638; 1974 Session, 65th G.A., ch. 1263. The amendment purports to expand protection afforded municipal officers and employees, not to create municipal liability for breach of statutory inspection duties.

This conclusion is supported by the fact the amendment was proposed by the House Committee on Education. The complete explanation attached to the bill by the committee is as follows:

> This bill provides that "officer" within chapter 613A includes members of the governing body of the municipality. Presently there is some question whether persons such as school board members are "officers" of a municipality under the municipal tort claims act.

> The definition of tort is expanded to include acts which may not presently be covered and is expanded to cover reasonable acts in the best interests of the municipality which might be outside the scope of employment or duty.

> The governing body of a municipality is specifically granted authority to purchase insurance out of the general fund which may not presently be possible.

> The statute of limitations is extended and made to apply to suits against indi-

vidual employees, officers and agents and the act is made exclusive against the municipality where the tort is within the coverage of chapter 613A.

*See* H.F. 462, 64th G.A. We have previously given weight to such explanations in ascertaining legislative intent. *See City of Altoona v. Sandquist,* 230 N.W.2d 507, 509 (Iowa 1975).

Whatever one may believe of the merit of the "growing trend" toward imposing liability upon government for breach of statutory inspection duties, the creation of statutory liability is a legislative rather than judicial prerogative. It is for the legislature to decide whether municipalities can be trusted to see that their officers, employees and agents perform their statutory duties without the compulsion of municipal financial liability when they do not. We have no legislative basis for holding that municipalities will be liable for all foreseeable injuries resulting from defects in premises which are uncorrected because of breach of statutory inspection duties.

I would hold that building codes and inspection statutes and ordinances do not create a duty to individuals unless they do so in express terms or by clear implication.

LeGRAND and McGIVERIN, JJ., join in this special concurrence.