HECHT, Justice
(concurring in part and dissenting in part).
I agree with the majority’s conclusion that various provisions in chapter 461A, standing alone, do not create a private right of action for alleged violation of them. However, I dissent on the other issues because I believe the public-duty doctrine does not foreclose the common 'law claims and discretionary-function immunity does not arise under the circumstances of this case. I would vacate the decision of the court of appeals, reverse the district court’s summary judgment ruling, and remand for trial.
I. The Public-Duty Doctrine.
The public-duty doctrine is not new. See Held v. Bagwell, 58 Iowa 139, 144, 12 N.W. 226, 228-29 (1882) (concluding a county supervisor owed a duty “for the benefit of the public” but owed no duty to the individual plaintiff). But our understanding of tort law principles has changed significantly since the nineteenth century, and our current understanding justifies a fresh look at the doctrine.
The legislature enacted the Iowa Tort Claims Act (ITCA) in 1965. See generally 1965 Iowa Acts ch. 79. The ITCA abrogated — with some express exceptions now codified in Iowa Code section 669.14 (2009) — the former rule of governmental immunity and made the state liable for negligence “to the same claimants, in the same manner, and to the same extent as a private individual under like circumstances.” 1965 Iowa Acts ch. 79, § 4; accord Iowa Code § 669.4. Notably, the common law public-duty doctrine is not among the express exceptions to the waiver of immunity. See Iowa Code § 669.14; see also Maple v. City of Omaha, 222 Neb. 293, 384 N.W.2d 254, 260 (1986) (acknowledging some exceptions to liability in Nebraska’s political subdivisions tort claims act, but noting “[njowhere is there found an exemption for the exercise of a duty owed to the public generally”); Brennen v. City of Eugene, 285 Or. 401, 591 P.2d 719, 725 (1979) (en banc) (“In abolishing governmental tort immunity, the Legislature specifically provided for certain exceptions under which immunity would be retained, and we find no warrant for judicially en-grafting an additional exception onto the statute.” (Citation omitted.)).
The phrase “the state shall be liable” in section 669.4 is susceptible to two reasonable interpretations. It might mean only that the legislature intended to remove the immunity the state previously enjoyed when it otherwise owed a duty. But it might also mean the legislature intended to lift the state’s immunity with certain enumerated exceptions and put the state and private individuals on equal footing with respect to tort liability. I believe the second interpretation is correct because it gives meaning to the related phrase “to the same claimants, in the same manner, and to the same extent as private individuals.” Iowa Code § 669.4; see id, § 4.4(2) (“The entire statute is intended to be effective.”); Neal v. Annett Holdings, Inc., 814 N.W.2d 512, 520 (Iowa 2012) (noting we interpret statutes to give all words and phrases meaning while assuming no provision is superfluous). We must give meaning to the legislature’s clear expression of the principle of sameness in this tort liability context.
We recognized the importance of the sameness principle in 1979, relying on an Alaska decision that rhetorically asked, “Why should the establishment of duty become more difficult when the state is the defendant?” Wilson v. Nepstad, 282 N.W.2d 664, 668 (Iowa 1979) (quoting
*66 Adams v. State, 555 P.2d 235, 242 (Alaska 1976)). If the state is to be treated like a private litigant, the public-duty doctrine must give way because its practical effect is to “create immunity where the legislature has hot.” Adams, 555 P.2d at 242; see also Leake v. Cain, 720 P.2d 152, 160 (Colo.1986) (en banc) (“[W]hether or not the public duty rule is a function of sovereign' immunity, the effect of the rule is identical to that of sovereign immunity. Under both doctrines, the existence of liability depends entirely upon the public status of the defendant.”); Hudson v. Town of E. Montpelier, 161 Vt. 168, 638 A.2d 561, 566 (1993) (“[Although the [public-duty] doctrine is couched in terms of duty rather than liability, in effect, it resurrects the governmental immunities that have been abrogated or limited.... ”). We further noted in Wilson that “the trend in this area is toward liability,” Wilson, 282 N.W.2d at 667, and unequivocally concluded “[t]he legislature could not have expressed better or more consistently its intention to impose in the same manner as in the private sector ... tort liability for negligence,” id. at 669. This year, the Illinois Supreme Court used similar reasoning in concluding “the legislature’s enactment of statutory immunities has rendered the public duty rule obsolete.” Coleman v. E. Joliet Fire Prot. Dist., 399 Ill.Dec. 422, 46 N.E.3d 741, 756 (Ill.2016).[8]
*67 I acknowledge that we stated in 2007— after deciding Wilson — that the public-duty doctrine is “alive and well in Iowa.” Raas v. State, 729 N.W.2d 444, 449 (Iowa 2007). I think that characterization of the doctrine was inapt. Although we have applied the public-duty doctrine since the ITCA’s enactment, we have repeatedly narrowed its scope and often applied exceptions to it. See Kolbe v. State, 625 N.W.2d 721, 729 (Iowa 2001). .
The state “is liable for tortious commissions and omissions when authority and control over a particular activity has been delegated to it ... and breach of that duty involves a foreseeable risk of injury to an identifiable class to which the victim belongs.” Wilson, 282 N.W.2d at 671. We have said the public-duty doctrine does not foreclose a claim when the identifiable class of people to which the state (or a municipality or county) owed a duty was “occupants of multi-family dwellings and other specified structures” in Des Moines, id. at 672, “all those rightfully using the roads” in Lee County, Harryman v. Hayles, 257 N.W.2d 631, 638 (Iowa 1977), overruled on other grounds by Miller v. Boone Cty. Hosp., 394 N.W.2d 776, 781 (Iowa 1986), and “the traveling public” in Scott County, Symmonds v. Chi., Milwaukee, St. Paul & Pac. R.R., 242 N.W.2d 262, 265 (Iowa 1976). We have also declined to apply the doctrine -to claims when the class of persons exposed to a risk created by governmental actors is clearly limited. See Summy v. City of Des Moines, 708 N.W.2d 333, 344 (Iowa 2006) (invitees on a municipal golf course); Adam v. State, 380 N.W.2d 716, 723 (Iowa 1986) (“producers doing business with grain dealers”). In short, the public-duty doctrine is an anachronistic common law framework that we often avoid — and we should finally cut bait and abandon’ it altogether. Cf. Kent v. City of Columbia Falls, 379 Mont. 190, 350 P.3d 9, 21 (2015) (Cotter, J., concurring) (suggesting the public-duty doctrine may no longer be viable in Montana and asserting the courts in that state have “erred in expansively reviving [governmental] immunity by resort to a judicially-created theory”). I would disavow Kolbe and Raas to the extent they perpetuate the public-duty doctrine.
But even if a majority of this court is not yet prepared to abandon the doctrine completely, we should not apply it in this casé. In Kolbe, the plaintiff asserted the state negligently issued a driver’s license to a *68 sight-impaired driver, but we concluded “the licensing provisions in Iowa Code chapter 321 ... are for the benefit of the public at large” and therefore applied the public-duty doctrine. Kolbe, 625 N.W.2d at 729. The facts here are distinguishable. We are not dealing with a general licensing statute or a broad duty of care owed by the State to members of the general public from Larchwood to Keokuk, Hamburg to New Albín, and everywhere in between. Instead, the duty I would recognize in this case is one the State owed only to the boaters on Storm' Lake who were exposed to a risk of serious injury or death from the submerged dredge pipe. Unlike the rather inchoate and generalized risk to any motorist or pedestrian traversing an unspecified roadway that could be literally anywhere in Kolbe, the risk allegedly created by the State and its dredging agents endangered a limited universe of people at a specific location. This very specific risk of serious injury or death affirmatively created by the State and its agents in a dredging enterprise undertaken for the benefit of the State makes this case more like Harryman and Symmonds than Kol-be. In fact, the number of boaters exposed to the risk in this case is probably smaller than the number of motorists exposed to road hazards in Harryman and Symmonds — cases in which we concluded the public-duty doctrine did not apply because the class of persons exposed to the risk of physical injury was sufficiently limited and identifiable. See Wilson, 282 N.W.2d at 672. And in this case — unlike in Harryman and Symmonds — the risk was created by the affirmative acts of actors whose conduct the State could control by prescribing terms for the dredging activity. That differentiates this case from, for example, a hypothetical scenario involving the State’s failure to remove a naturally occurring hazard — like a ball of tree roots — from a waterway. See State ex rel. Barthelette v. Sanders, 756 S.W.2d 536, 537-38 (Mo.1988) (en banc).
The factually analogous cases from other jurisdictions that the majority cites are less persuasive in my view. The Washington case applied the public-duty doctrine only to a third-party beneficiary claim based on statutory violations, saying nothing about common law negligence claims. Ravenscroft v. Wash. Water Power Co., 136 Wash.2d 911, 969 P.2d 75, 84-85 (1998) (en banc). As one Washington Supreme Court justice later clarified, “the only governmental duties ... limited by application of the public duty doctrine are duties imposed by a statute, ordinance, or regulation” and the Washington Supreme Court “has never held that a government did not have a common law duty solely because of the public duty doctrine.” Munich v. Skagit Emergency Commc’n Ctr., 175 Wash.2d 871, 288 P.3d 328, 336 (2012) (Chambers, J., concurring) (emphasis added). Furthermore, I posit that the Missouri cases applying the public-duty doctrine are no longer good law because they predated the Missouri Supreme Court’s 2008 decision abandoning the public-duty doctrine for government entities. Compare Barthelette, 756 S.W.2d at 538-39, and Cox v. Dep’t of Nat. Res., 699 S.W.2d 443, 449 (Mo.Ct.App.1985), with Southers v. City of Farmington, 263 S.W.3d 603, 613 (Mo.2008). Although the Southers court concluded an individual defendant was “eligible for the protections of the public duty doctrine,” it noted those protections were “personal ... and [could not] be extended to protect the City.” Southers, 263 S.W.3d at 620.
There is yet another reason to review the public-duty doctrine thoroughly and ultimately discard it or at least continue to apply it narrowly. Our previous decisions applying the doctrine were, based on provisions in the Restatement (Second) of *69 Torts. See Kolbe, 625 N.W.2d at 729. Yet, as the majority recognizes, in 2009— after Raas declared the public-duty doctrine alive and well, see Raas, 729 N.W.2d at 449—we adopted the duty framework under the Restatement (Third) of Torts: Liability for Physical, and Emotional Harm. Thompson v. Kaczinski, 774 N.W.2d 829, 835 (Iowa 2009). Thompson revealed a new understanding of the duty framework, removing foreseeability from the duty analysis and expressing disinclination toward no-duty rales except in rare circumstances. I do not suggest no-duty rales are completely incompatible with the Restatement (Third). Indeed, as the majority observes, the Restatement (Third) includes references to the public-duty doctrine in certain comments. Restatement (Third) of Torts: Liab. for Physical & Emotional Harm § 7 reporter’s note cmt. g, at 93-94 (Am. Law Inst.2012) [hereinafter Restatement (Third) ]; id § 37 cmt. i, at 7. Yet, those references to the doctrine in the Restatement (Third) comments and reporter’s notes[9] do not justify' its muscular application favored by the majority opinion in this case.
As the majority notes, the Restatement (Third) provides that “[a]n actor whose conduct has not created a risk of physical harm to another has no duty of care to the other unless a court determines” the actor owes an affirmative duty of care. Restatement (Third) § 37, at 2. Sections 38-44 set forth .affirmative duties a court might determine the actor owes. See id. §§ 38-44. The affirmative duties recognized in those sections, however, are nonexclusive. See id. § 37 cmt. g, at 7 (noting the sections “recognizing certain- relationships as imposing an affirmative duty are stated non-exclusively, leaving to courts whether to recognize additionál relationships as sufficient to impose an affirmative duty”).
Even when the- legislature has not created a private cause of action for violation of a statute, when the interest protected is physical harm, ■ “courts may consider the legislative purpose and the values reflected in the statute to decide that the purpose and values justify adopting a duty that the common - law had not previously recognized.” Id. § 38 cmt. c, at 22. Although I share the majority’s conclusion that the dredging provisions in chapter 461A do not create a private cause of action standing alone, I conclude the State’s ability to control the terms of removal of silt from the *70 lakebed through the permitting - process, see Iowa Code § 461A.63, is relevant to the existence of an affirmative common law duty. Dredging structures in the water pose a risk of severe physical injury or death to. boaters — as this case tragically illustrates — and I conclude the State’s involvement in.creating such a risk justifies our recognition of an affirmative duty in this case. Even though the State’s employees did not directly create a risk by placing the. dredge pipe.in the location where Foote encountered it and did not place the buoys marking the pipe’s location, on. the date of the incident, I nonetheless conclude the State had an affirmative .duty of care to the plaintiffs under the circumstances presented here. The State had statutory authority to prescribe- the terms of -the dredging operation. This authority would permit the State to mandate safety standards for locating the dredging equipment and warning of its presence. Given its ownership of the lakebed, the State also had the authority to inspect the dredge operation and evaluate the operator’s compliance with the prescribed standards to make the lake reasonably safe for visitors.[10]
The relationship between boaters and the State informs my conclusion that the State owed an affirmative duty. Like the golfer in Summy, who the City of Des Moines invited to engage in recreational activity at the Waveland Golf Course, the State invited Foote to use his boat on Storm Lake. See Summy, 708 N.W.2d at 341, .Although Foote did not pay a separate fee on the day of the incident for the opportunity to use the boat on Storm Lake, he did pay a fee to register his boat as a cost of using the State’s waters. I find unpersuasive and immaterial the majority’s factual distinction that other golfers on the course in Summy could not move about freely the way boaters on Storm Lake can.
My conclusion the State owed a duty does not automatically mean it breached the duty; duty and breach' analysis are separate. See Woods v. Dist. of Columbia, 63 A.3d 551, 561 (D.C.2013) (Oberly, J., concurring in the judgment) (asserting that even if courts discard the public-duty doctrine, “[t]he citizen might not ‘win’ because [he or] she still must prove the basic elements of a cause of action”). However, because I conclude the public-duty doctrine is no longer viable, and even if it is, the State owed'a duty in this case to an identifiably narrow group of people, a jury should resolve the question whether the State failed to exercise reasonable care. Summary judgment, on the public-duty doctrine ground was unwarranted.
II. Discretionary-Function Immunity.
The majority does not reach this issue, but I would hold the discretionary-function exception to the waiver of sovereign immunity does not apply here. Discretionary-function immunity only protects governmental a'ctors’ decision-making based' on policy considerations, See Anderson v. State, 692 N.W.2d 360, 364 (Iowa 2005); accord Walker v. State, 801 N.W.2d 548, 555 (Iowa 2011), Furthermore, “we narrowly construe the discretionary, function exception.” Walker, 801 N.W.2d at 555. “[Liability ,.. is the rule and immunity is the exception.” Schmitz v. City of Dubuque, 682 N.W.2d 70, 74 (Iowa 2004); *71 accord Graber v. City of Ankeny, 656 N.W.2d 157, 161 (Iowa 2003).
We apply a two-step test to evaluate whether a challenged act qualifies for the discretionary-function exception. Schneider v. State, 789 N.W.2d 138, 146 (Iowa 2010). First, we “consider whether the action is a matter of choice.” Anderson, 692 N.W.2d at 364. If it is, we proceed to determine whether that choice “is of the kind the discretionary function exception was designed to shield.” Id.; see also Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958-59, 100 L.Ed.2d 531, 540-41 (1988) (setting out the same two-part test under the Federal Tort Claims Act); Goodman v. City of Le Claire, 587 N.W.2d 232, 238 (Iowa 1998) (adopting Berkovitz in Iowa). Both prongs of the- test are important; “the mere exercise of judgment is not sufficient to establish discretionary-function immunity because some form of judgment is exercised in virtually all human endeavors.” Schmitz, 682 N.W.2d at 73.
•“The first step in our analysis is to determine the exact conduct that .is at issue.” Walker, 801 N.W.2d at 556. Tobe sure, the State made a choice in this case, but it was a limited one — to allow improvement of Storm Lake by dredging. Thus, the immunity might apply if the estate challenged the State’s decision whether to allow dredging. See Anderson, 692 N.W.2d at 366 (concluding the discretionary-function exception applied to a university’s decision whether to keep its library open during a severe winter storm); Goodman, 587 N.W.2d at 239-40 (concluding the discretionary-function exception applied to a city’s decision whether to excavate an abandoned landfill); cf. MS Tabea Schiffahrtsgesellschaft MBH & Co. v. Bd. of Comm’rs, 636 F.3d 161, 168 (5th Cir.2011) (concluding the federal discretionary-function exception barred “failure to dredge claims”). But the estate makes no such claim. Instead, it contends that, having made the initial decision to allow dredging, it was the State’s duty, in view of the severe risk of injury or death to boaters using the lake, to exercise reasonable care .in prescribing safety standards to be followed by the dredge operators and evaluating the operators’- compliance with those standards. I.agree. The.actionable conduct is not the initial decision whether to allow dredging, but the follow-on decisions about safe maintenance and operation of the dredge.
“Having identified the conduct that allegedly caused the plaintiffs’ harm, the question becomes whether the conduct is of the type that the legislature sought to immunize.” Ette v. Linn-Mar Cmty. Sch. Dist., 656 N.W.2d 62, 68 (Iowa 2002). Unless the State “genuinely could have considered' and balanced factors supported by social, economic, or political policies, we will not recognize the discretionary function immunity.” Anderson, 692 N.W.2d at 366. The State contends its decisions rested on a balancing of public policy factors such as safety, conservation, and water quality. However, “[t]he mere existence of a sweeping safety consideration does not catapult the [Statej’s actions into the zone of immunity.” Graber, 656 N.W.2d at 166. “Almost every decision made by a public employee is done with respect to general safety considerations.” Id. Furthermore, while the initial decision to allow dredging may have properly considered some environmental factors, I find it much less likely that the number or location of warning buoys placed on the dredge pipe could have had any appreciable- effect on water quality of conservation efforts. Because the State “has not articulated any ... policy concerns central to its actions, it has not met its burden to show the discretionary function immunity applies.” Mes *72 serschmidt v. City of Sioux City, 654 N.W.2d 879, 883 (Iowa 2002).
III. Conclusion,
The majority expands the public-duty doctrine “far more broadly than is necessary to strike the proper balance between protecting the [State] from sweeping liability ... and allowing [its] citizens the chance to prove that their government has failed them miserably.” Woods, 63 A.3d at 558. Even if we retain the doctrine — and I submit we should not — its application is inappropriate under the circumstances presented here. Furthermore, I believe the discretionary-function exception does not protect the State beyond its initial decision whether to allow dredging. I therefore respectfully dissent in part.
WIGGINS and APPEL, JJ., join this concurrence in part and dissent in part.

. Illinois is the latest jurisdiction to join the group that has retreated from, abolished, re- • jected, limited, or abandoned the public-duty ■ doctrine. See; e.g., Adams, 555 P.2d at 241 (concluding the public-duty "doctrine is in reality a form of sovereign immunity, which is a matter dealt with by statute ... and not to be ' amplified by court-created doctrine”); Leake, 720 P.2d at 160 ("[W]e reject the public duty rule in Colorado.... [T]he duty of a public entity shall be determined in the same manner as if it were a private party,”); Southers v. City of Farmington, 263 S.W.3d 603, 613 (Mo.2008) (en banc) ("[T]his court is no longer willing to apply the judicially-created protections of the public duty doctrine in a way that would insulate government entities from tort liability where the legislature has expressly abolished such immunity.”); Maple, 384 N.W.2d at 260-61 (rejecting the public-duty doctrine but nonetheless concluding as a matter of law that the defendant did not breach the duty it owed); Schear v. Bd. of Cty. Comm’rs, 101 N.M. 671, 687 P.2d 728, 732, 734 (1984) (declining to "breathe new life into” the public-duty doctrine because it is "a ghost of sovereign immunity ... and is inconsistent” with the state tort claims act); Ficek v. Morken, 685 N.W.2d 98, 107 (N.D.2004) (referring to those jurisdictions that retain the public-duty doctrine as "the .minority view” and "refusing] to adopt the public-duty doctrine as a part of North Dakota law”); Wallace v. Ohio Dep’t of Commerce, 96 Ohio St.3d 266, 773 N.E.2d 1018, 1027 (2002) ("It is spurious logic to conclude that a doctrine that is, by definition, available only to public defendants can be consistent with a statute mandating that suits be determined in accordance with rules of law applicable to private parties.”); Brennen, 591 P.2d at 725 ("[A]ny distinction between ‘public’ and ‘private’ duty is precluded by statute in this state.”); Catone v. Medberry, 555 A.2d 328, 333-34 (R.I.1989) (declining to revive the public-duty doctrine . because it "would effectively smuggle back into law the doctrine of sovereign immunity that [the state tort claims act] was designed to constrain”); Hudson, 638 A.2d at 568 (declining to adopt the public-duty doctrine and concluding the doctrine is "confusing and. inconsistent”); DeWald v. State, 719 P.2d 643, 653 (Wyo.1986) ("The public-duty/special-duty rule was in essence a form of sovereign immunity and viable when sovereign immunity was the rule. The legislature has abolished sovereign immunity in this area. The public ditty [doctrine] ... is no longer viable.”); see also Beaudrie v. Henderson, 465 Mich. 124, 631 N.W.2d 308, 313-14 (2001) (limiting the public-duty doctrine only to one category of cases involving police protection, and noting the doctrine, if applied any more broadly than that, “is tantamount to a grant of common-law governmental immunity”); Doucette v. Town of Bristol, 138 N.H. 205, 635 A.2d 1387, 1390 (1993) (discarding the public-duty doctrine for municipal defendants in part because the doctrine never applied in that jurisdiction to state tort claims); Thompson v. Waters, 351 N.C. 462, 526 S.E.2d 650, 652 *67 (2000) (noting the public-duty doctrine had never been applied in that jurisdiction "to a claim against a municipality or county in a situation involving any group or individual other than law enforcement,” and. declining to extend the doctrine any further).
Utah and many other jurisdictions retain the public-duty doctrine. See Cope v. Utah Valley State Coll, 342 P.3d 243, 249-50 (Utah 2014); see also Ezell v. Cockrell, 902 S.W.2d 394, 399 & n. 5 (Tenn.1995) (listing jurisdictions that retained the doctrine as of 1995). However, the Utah court noted it "did not adopt the public duty doctrine until several years after the legislature first limited Utah’s sovereign immunity,” so "abrogation of absolute sovereign immunity could not impliedly extinguish a doctrine not yet recognized.” Cope, 342 P.3d at 249-50 (emphasis added). 'Iowa’s history is clearly different because we recognized and applied the public-duty doctrine well before the ITCA. See, e.g., Genkinger v. Jefferson County, 250 Iowa 118, 120, 93 N.W.2d 130, 132 (1958); Beeks v. Dickinson County, 131 Iowa 244, 248, 108 N.W. 311, 312 (1906); Held, 58 Iowa at 144, 12 N.W. at 228-29, Connecticut, which also maintains the public-duty doctrine, does so because "Connecticut has not abolished governmental immunity.” Gordon v. Bridgeport Hous. Auth., 208 Conn. 161, 544 A.2d 1185, 1197 (1988). Although these are only two examples, they illustrate that we should not “choose a rule merely because a majority” of other jurisdictions follow a similar one. Luana Sav. Bank v. Pro-Build Holdings, Inc., 856 N.W.2d 892, 902 (Iowa 2014) (Wiggins, J., dissenting).

. The majority relies on the reporter’s note to conclude the public-duty doctrine perseveres under section 7 of the Restatement (Third) and undercuts the general duty of care. But the reporter’s note merely collects cases applying the, doctrine, and the cases obviously predate the Restatement (Third) — so the reporter’s note takes no position on the doctrine’s continuing vitality under section 7. Restatement (Third) § 7 reporter’s note cmt. g, at 93-94. In fact, the actual comments — not the reporter’s notes — for section 7 suggest the no-duty rule inherent in the public-duty doctrine might be folded into the concept of discretionary-function immunity. See id. § 7 cmt. g, at 80 ("Courts employ no-duty rules to defer to discretionary decisions made by offi-cials_”). The reporter’s note, standing alone, is not nearly as significant as the majority suggests. Rather than maintaining the public-duty doctrine as part of the general duty of care under section 7, I conclude the Restatement (Third) instead relegates the doctrine to the status of a rare exception contemplated — but certainly not mandated — by section, 37, consistent, with the Restatement (Third)’s general disinclination toward no-duty rules. See id. § 7 cmt, a, at 78 (noting no-duty rules are only appropriate in limited circumstances); id. § 37 cmt. i, at 7 (acknowledging that the public-duty doctrine reflects "the concern that the judicial branch give appropriate deference to a coordinate branch of government when a decision allocates resources or involves other significant political, social, or economic determinations”). And even then, a court may determine an actor owes an affirmative duty of care notwithstanding section 37. Id. § 37, at 2.

, I would hold the State’s duty as the lake-bed's owner to keep the premises in a reasonably safe condition “is a nondelegable duty.” Kragel v. Wal-Mart Stores, Inc,, 537 N.W.2d 699, 703 (Iowa 1995), Although the State could cede performance of that duty to the Lakeside Improvement Commission, it cannot avoid liability for nonperformance by doing so. See id, at.704.